Filed 1/28/26  P. v. Green CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RAY FITZGERALD GREEN, <br><br> Defendant and Appellant. | F088448 <br><br> (Super. Ct. No. BF187349A) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Charles M. Bonneau, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland and Lance E. Winters, Chief Assistant Attorneys General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen and Caitlin Franzen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found defendant Ray Fitzgerald Green guilty of second degree robbery, grand theft, evading a peace officer while driving recklessly, possession of a firearm by a felon, and resisting a peace officer. He was sentenced to 27 years four months, plus 25 years to life.

Defendant raises numerous claims on appeal. First, defendant argues a witness's in-court identification was unduly suggestive, and the prosecutor's questions during the identification process showed implicit bias which violated the California Racial Justice Act of 2020[1] (Pen. Code,[2] § 745). Next, he contends the trial court abused its discretion in admitting his prior robbery convictions for impeachment and evidence of bad acts under Evidence Code section 1101. Defendant also argues substantial evidence does not support the jury's finding that defendant used a firearm during the robbery (§ 12022.53, subd. (b)).

Defendant also raises various sentencing errors. He argues substantial evidence does not support the aggravating factor that the robbery involved a taking of great monetary value (Cal. Rules of Court,[3] rule 4.421(a)(9)) and in the alternative, the factor is unconstitutionally vague and lacks notice. He further argues two other aggravating factors under rule 4.421(b)(2) (prior convictions that are numerous or of increasing seriousness) and rule 4.421(b)(1) (violent conduct which indicates a serious danger to society), were improperly imposed because the trial court made use of dual facts. Defendant maintains the court erred in imposing the upper term sentence, imposing consecutive sentences, failing to dismiss the firearm enhancement (§ 12022.53, subd. (b)) and two prior serious felony enhancements (§ 667, subd. (a)), and failing to strike his

---

[1] We refer to the California Racial Justice Act of 2020 as the Racial Justice Act or RJA.

[2] Undesignated statutory references are to the Penal Code.

[3] Undesignated rule references are to the California Rules of Court.

prior strike under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). Finally, defendant maintains there is an error in the clerk's minute order that requires correction.

We direct the trial court to issue an amended minute order and abstract of judgment. We otherwise reject defendant's claims and affirm the judgment.

## PROCEDURAL BACKGROUND

On June 26, 2024, the Kern County District Attorney filed an amended information charging defendant with second degree robbery (§ 212.5, subd. (c); count 1), grand theft (§ 487, subd. (a); count 2), fleeing a police officer while driving recklessly (Veh. Code, § 2800.2; count 3), felon in possession of a firearm (§ 29800, subd. (a)(1); count 4), driving with a suspended license (Veh. Code, § 14601.2, subd. (a); count 5),[4] and resisting a peace officer (§ 148, subd. (a)(1); count 6).

The amended information alleged that defendant personally used a firearm as to count 1 (§§ 12022.5, subd. (a), 12022.53, subd. (b)) and as to counts 2 and 3 (§ 12022.5, subd. (a)). The amended information also alleged defendant had eight prior strikes (§§ 667, subds. (b)–(i); 1170.12, subds. (a)–(d)) and two prior serious felony convictions (§ 667, subd. (a)). The amended information further alleged the following circumstances in aggravation: on counts 1 through 4, defendant was armed with or used a weapon during the commission of the crime (rule 4.421(a)(2)), the crime that was carried out involved planning or sophistication (rule 4.421(a)(8)), the crime involved a taking of great monetary value (rule 4.421(a)(9)), defendant's prior convictions are numerous or of increasing seriousness (rule 4.421(b)(2)), and he served a prior prison term (rule 4.421(b)(3)).

---

[4] On July 3, 2024, count 5 was dismissed during trial upon motion of the prosecutor and in furtherance of justice. (§ 1385.)

On July 8, 2024, the jury found defendant guilty as charged on all counts. The jury also found true that defendant personally used a firearm during the commission of count 1 (§§ 12022.5, subd. (a), 12022.53, subd. (b)) and count 2 (§ 12022.5, subd. (a)).[5]

In a bifurcated proceeding, the trial court found the prior conviction allegations and six aggravating factors true.[6] The court did not find true that defendant used a weapon during the commission of the crime (rule 4.421(a)(2)) because the finding would constitute dual use of facts.[7] The court denied defendant's motion to strike his prior strikes.

On August 6, 2024, the trial court sentenced defendant to 27 years, four months plus 25 years to life as follows: On count 1, 25 years to life, plus 10 years for the firearm enhancement (§ 12022.53, subd. (b)) and 10 years for the prior serious felony enhancements (§ 667, subd. (a)). For the firearm allegation under section 12022.5, subdivision (a) as to count 1, four years was imposed, and stayed pursuant to rule 4.447. On count 3, six years (the upper term) consecutive to count 1; on count 4, 16 months (one-third the middle term), consecutive to count 3; on count 6, one year to be served

---

[5] There was no jury finding as to the section 12022.5, subdivision (a) enhancement as to count 3, and this allegation was dismissed by the court in the interest of justice on August 6, 2024.

[6] The parties agreed to a bifurcated court trial on all prior conviction allegations and aggravating factors.

[7] We note that the trial court found defendant engaged in conduct which indicates a serious danger to society (rule 4.421(b)(1)), however, the amended information does not allege this as an aggravating factor. The court likely followed the probation report's recommendation regarding imposition of this factor. Defendant does not claim on appeal that this factor in aggravation was not properly alleged, and thus, we do not reach this issue. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1029 [points not supported by legal argument and citation to authority may be treated as waived].) There was no objection to the imposition of any aggravating factor at the time of sentencing, thus even if the issue was raised here, defendant would have forfeited his claim. (*People v. Scott* (1994) 9 Cal.4th 331, 356.)

concurrently to count 4; and on count 2, 25 years to life plus four years pursuant to section 12022.5, subdivision (a), stayed pursuant to section 654.

## FACTUAL BACKGROUND

### I. The Prosecution's Case

On September 15, 2021, Sonia S.[8] was working as a teller at a Wells Fargo bank in Bakersfield. At about 10:35 a.m., Sonia's teller window was approached by a "[t]all, African-American" man wearing a "FedEx shirt," mask, and hat.[9] He presented her with a note that said, "I have a gun." The note also stated, "I want large bills, only 20's, 50's, 100's." Sonia knew that she was being robbed and was afraid that the person would do something to her if she did not comply with his demand.

Sonia hit an alarm button under her desk notifying law enforcement that she was being robbed. She grabbed about $3,000 cash out of the bank's drawer and handed it to defendant.[10] There was a hidden tracking device, that allows law enforcement to track the location of money in the event of a robbery, inside a portion of the money Sonia gave to defendant. At some point, defendant asked for more money. He then took the note, put the money inside a satchel, and left the bank.

After defendant left the bank, Sonia called 911 and told the dispatcher that she was robbed. Sonia described defendant as "Black, tall," in his 40's, wearing a "FedEx" shirt, COVID mask, and carrying a satchel.

Bakersfield Police Department Officer A. Guardado received a notification at about 10:38 a.m. that a bank robbery just occurred while on patrol. He was provided

---

[8] For the sake of privacy, and pursuant to rule 8.90, we refer to Sonia by her first name. No disrespect is intended.

[9] The branch operations manager at the bank that day also described the robber as "a gentleman in a FedEx uniform . . . with a hat and mask on."

[10] A subsequent money count showed Sonia's teller drawer balance was short by $3,080.01.

with a description of the suspect and informed that the tracker was moving eastbound from the bank in the right-hand lane. Guardado started traveling in the direction of the tracker and noticed a tan Acura in the same area. The driver matched defendant's description, a "[B]lack male" who "appeared to be in his 40's." When Guardado drove next to defendant, he appeared disgruntled and raised his hands. Guardado continued to follow the tan Acura; the license plate did not match the vehicle. Guardado initiated a traffic stop.

Defendant moved to the right shoulder of the freeway, but then sped off, drastically increasing speed, and traveled northbound on State Route 99. It was approximately 11:00 a.m. and there was heavy traffic on the freeway. Defendant drove at a speed well over 130 miles per hour. Several collisions almost occurred because of defendant's actions. He traveled through a construction zone and struck multiple cones, which scattered them onto the freeway, causing multiple vehicles to almost collide with each other. Defendant continued to drive erratically with a complete disregard for safety. He then tried to exit the freeway but lost control during a sharp right turn. The vehicle drifted off the road, struck a tree, and rolled over. Guardado and other law enforcement gave defendant commands to show his hands, but he did not respond. Guardado eventually grabbed defendant's wrists through the shattered window, however, defendant began resisting. He pulled away from law enforcement as they extracted him from his car and while they attempted to place him in handcuffs.

A search of defendant's car revealed a functioning .25-caliber semiautomatic pistol on the driver's side floorboard, a pair of prescription reading glasses, a yellow baseball hat, a FedEx polo, and a Dell laptop bag. The laptop bag contained $3,080 and the bank's tracker. The note defendant gave to Sonia in the bank was also found in a white plastic bag inside defendant's car.

6.

## II.    The Defense Case

Defendant testified on his own behalf.  On September 15, 2021, defendant lived in San Jose, California, and came to Bakersfield in his gold Acura to look at a motorcycle that another individual had for sale.  He is a part of a motorcycle club called "Soul Brothers," and he frequently travels to Bakersfield and Fresno to meet other club members.  Defendant was supposed to meet a club member and the motorcycle seller at a shopping center in Bakersfield between 9:00 and 11:00 a.m.  Defendant parked at about 9:30 a.m. and waited in the parking lot.  However, the club member and the individual who was supposed to sell him a motorcycle never showed up to the meeting.

While he was waiting in the parking lot, defendant saw an "African-American" man running through the parking lot with a white trash bag in his hand.  The man threw the white trash bag near the Dumpster area of the shopping center and left.  Defendant collects trash so he picked it up.  He put the bag in the car and decided to leave because he had to be at a meeting in Fresno at noon.

When defendant was driving on the freeway, he did not see or hear law enforcement's lights and sirens because of his "very tinted windows."  He drove about 75 miles per hour[11] along the freeway.  He decided to pull over because the car's engine was "running . . . hard."  Defendant took the curve on the exit fast, the car went airborne and hit a tree.  Defendant was confused when he saw law enforcement surrounding his car with guns; he thought he suffered a concussion and was in pain.  Defendant was confused and did not resist police officers.

Defendant owned the Acura; however, his nephew had been in possession of it for about four months prior to that day, defendant only picked up the car in the early morning

---

[11] Defendant testified on cross-examination that he may have gone up to 90 miles per hour, but denied going 120 miles per hour because the car could not go that fast.

of September 15, 2021, because his motorcycle, his main form of transportation, needed work. He had no idea that the license plates to the car had been switched.

## DISCUSSION

### I.     Eyewitness Identification and Racial Justice Act

Defendant contends the trial court violated his federal constitutional right to due process by admitting Sonia's in-court testimony identifying him as the person who committed the robbery. He contends the in-court identification was unnecessarily suggestive because he was the "sole African-American male at the defense counsel table." He further contends this identification violated the RJA because the prosecutor elicited testimony from Sonia that the perpetrator's race was the same as defendant, which showed racial bias. Defendant maintains that if his claims are forfeited, his counsel rendered prejudicially ineffective assistance by failing to object on the grounds that the identification violated due process and the RJA.

The People respond that defendant forfeited his claims, and reaching the merits, argue that he fails to demonstrate the in-court identification was unduly suggestive or a violation of the RJA. We agree with the People.

#### A. Additional Background

There were no pretrial lineups conducted. The trial court made a finding of fact that defense counsel had "equal availability to have a lineup conducted of any suspect arrested by law enforcement . . . ." There was no objection by either party to that finding.

At trial, Sonia described the robber as tall and "African-American" who wore a "FedEx" shirt, mask, and a hat.[12] Video surveillance from the bank was played for the jury. Sonia confirmed the video depicted the man that robbed her.

---

[12] During the 911 call, Sonia described defendant as "Black, tall," in his 40's, wearing a "FedEx" shirt and COVID mask and carrying a satchel.

8.

Sonia testified she looked at defendant during the trial proceedings. The prosecutor asked if she had seen the person the police arrested. Defense counsel objected pursuant to Evidence Code section 352. The trial court overruled defense counsel's objection.

Thereafter, the following colloquy occurred between the prosecutor and Sonia:

"[Q.] Is there anything that you think about the person in the courtroom, about whether this might be the person that robbed you?

"A. Yeah.

"Q. . . . [¶] . . . The person that robbed you was, according to your 911 call and the video, African-American, right?

"A. Correct.

"Q. And the gentleman we have seated over here to my left, wearing the blue shirt, is African-American, right?

"A. Yes.

"[Q.] . . . I'm referring to the defendant as wearing the blue shirt. [¶] . . . [¶] . . . With African-Americans, there's different shades. [¶] There's different skin tones, just like there is of all races?

"A. Yes.

"Q. After you see the defendant here in court today, does he appear to be consistent with the skin tone of the person that robbed you back on September 15th[, 2021]?

"A. He does.

"Q. The person that robbed you on September 15th[, 2021], you described on the 911 call as kind of an older person, someone in their 40's, by your estimation . . . . [¶] As you see the defendant in court today, does he appear to be an older gentleman?

"A. Yeah.

"Q. Is it consistent, at least in your mind, with someone that might look like they're in their 40's?

9.

"A.     I don't know.

"Q.     . . . [I]t seems like it would be hard to sit there and say this is definitely the guy who robbed me even if it really was.  [¶]  Would you agree?

"A.     Yeah.

"Q.     . . . [I]s there anything that stands out about this gentleman, that there's just no way this could be the guy?

"A.     No."

On cross-examination, Sonia confirmed she provided law enforcement a description of the robber, which was a "[B]lack male" wearing a "FedEx" shirt, face mask, satchel, and a hat.  Sonia could not recall defendant's eye color, his height, or body-build.

On redirect examination, Sonia stated defendant looked "familiar" and she was "certain" he was the robber "[b]y his eyes."

## B. Defendant Forfeited His Claim Regarding Sonia's In-court Identification

A pretrial lineup is an available remedy upon request where the defendant anticipates an in-court identification may be unduly suggestive to resolve identification issues.  (*People v. Green* (1979) 95 Cal.App.3d 991, 1004; see *People v. Vallez* (1978) 80 Cal.App.3d 46, 56.)  However, when the defendant "knowingly and deliberately *rejects* the preliminary availability of a lineup as a tactic merely to forestall a legitimate identification by a victim in court, objections should be deemed as waived."  (*People v. Green*, at p. 1004.)

Here, defendant was aware prior to the in-court identification of his right to request a lineup.  He did not exercise his right.  Defendant's argument that his objection on Evidence Code section 352 grounds preserved his appellate claim lacks merit.  He stipulated to the trial court's finding that he was provided an opportunity to request a pretrial lineup.  By refusing to exercise his right, defendant cannot now argue on appeal

that the identification made by Sonia at trial was unduly suggestive because he was in the courtroom. His claim is forfeited.

Defendant argues his counsel was ineffective for failure to object on due process grounds. We reject his contention because an objection on due process grounds would not have preserved his claim regarding the suggestiveness of Sonia's courtroom identification. (See, e.g., *People v. Farnam* (2002) 28 Cal.4th 107, 184.) However, to the extent defendant argues his counsel was ineffective for failure to request a pretrial lineup to avoid in-court identification, we will address the merits to show defense counsel was not ineffective. (See *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6 [an appellate court has authority to reach a forfeited claim].)

## C. Defense Counsel Did Not Provide Ineffective Assistance for Failing To Request a Pretrial Lineup

To prevail on an ineffective assistance of counsel claim, defendant must establish both deficient performance and prejudice, that is, "a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 746; see *id*. at pp. 745–746.) Tactical errors are generally not deemed reversible, and counsel's decisions are evaluated in the context of the record. (*Strickland v. Washington* (1984) 466 U.S. 668, 689 (*Strickland*).)

The reviewing court must determine whether the record contains an explanation for the challenged conduct. (*People v. Pope* (1979) 23 Cal.3d 412, 425 (*Pope*), overruled on other grounds in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.) If the record sheds light on why counsel acted or failed to act in the manner challenged, the conviction will be affirmed if counsel's acts or omissions resulted from an informed tactical choice within the range of reasonable competence. (See *People v. Fain* (1969) 70 Cal.2d 588, 600.) However, in some cases the record on appeal is silent regarding why counsel acted or failed to act in the manner challenged. These cases are affirmed on appeal "unless counsel was asked for an explanation and failed to provide one, or unless

11.

there simply could be no satisfactory explanation . . . ." (*Pope*, at p. 426.) An assertion that counsel was ineffective on a silent record is more appropriately made in a petition for habeas corpus, which promotes judicial economy.[13] (*People v. Dickey* (2005) 35 Cal.4th 884, 926; see *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.) Thus, defendant's claim on appeal that he was denied effective assistance of counsel fails to overcome the "strong presumption" that his trial counsel's conduct fell within the wide range of reasonable professional assistance. (*Strickland*, *supra*, 466 U.S. at p. 689.)

There is nothing in the record that shows the reason defense counsel did not request a pretrial lineup. One possible rational tactical purpose for not wanting a pretrial lineup would be defendant's belief that he would be identified at a pretrial lineup, strengthening the prosecution's case against him. It is reasonable to conclude defense counsel, acting as a diligent advocate, made a tactical decision not to conduct a pretrial lineup to draw further attention to defendant's identity as the perpetrator of the crime.

Defendant also fails to demonstrate he suffered prejudice and a violation of due process by Sonia's in-court identification. (*Strickland*, *supra*, 466 U.S. at pp. 691–692, 696.) To determine whether the admission of identification evidence violates a defendant's right to due process, the reviewing court considers: "(1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances . . . ." (*People v. Cunningham* (2001) 25 Cal.4th 926, 989.)

Defendant argues that his presence at the counsel table was the invitation to identify him as the perpetrator. However, this is not the standard used when assessing whether the identification was unduly suggestive. A procedure is unduly suggestive if it

---

[13] A habeas corpus proceeding provides an evidentiary hearing and allows trial counsel the opportunity to set forth his or her reasons for acting or failing to act in the manner challenged. (§§ 1483, 1484; *Pope*, *supra*, 23 Cal.3d at p. 426.)

implies in advance of identification by the witness the identity of the person suspected by the police. (*People v. Ochoa* (1998) 19 Cal.4th 353, 413.)

The record fails to show that Sonia was compelled in advance to identify defendant. Sonia was asked about defendant's physical characteristics, including his skin tone, eyes, and age. Sonia was not asked to specifically identify defendant, rather, she recognized him from the robbery by viewing his physical characteristics. She found defendant looked "familiar" because of "his eyes." There was nothing suggestive about the identification.

Guardado positively identified defendant as the robber in this case. The branch manager of the bank identified photographs from the bank surveillance video as being photographs of the "same guy" as the person that "robbed Sonia." The jury could compare defendant's physical appearance at trial to the video images at the time of the robbery to determine for themselves whether they believed Sonia's testimony and found his physical characteristics consistent with the perpetrator. Thus, there was other evidence regarding defendant's identity outside of Sonia's testimony.

Because we conclude the identification procedure was not suggestive, we need not determine its reliability. (*People v. Alexander* (2010) 49 Cal.4th 846, 902 [if the reviewing court finds the identification procedure was not suggestive, the inquiry ends].) There was no due process violation.

## D. Racial Justice Act

Defendant argues for the first time on appeal that his conviction should be reversed because Sonia's identification was racially biased and the prosecutor highlighted these racial consistencies, in violation of the Racial Justice Act (§ 745, subd. (a)(1)).

Effective January 1, 2021, the RJA prohibits state criminal convictions or sentences "on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) The purpose of the RJA is "to eliminate racial bias from California's criminal justice system

13.

because racism in any form or amount, at any stage of a criminal trial, is intolerable . . . [and] inimical to a fair criminal justice system." (Stats. 2020, ch. 317, § 2(i).)

"A violation is established if the defendant proves, by a preponderance of the evidence, any of the following" individuals involved in the case, including a judge, attorney, law enforcement officer, expert witness, or juror, "exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin." (§ 745, subd. (a)(1).) The statute defines the phrase " '[r]acially discriminatory language' " as "language that, to an objective observer, explicitly or implicitly appeals to racial bias, including, but not limited to, racially charged or racially coded language, language that compares the defendant to an animal, or language that references the defendant's physical appearance, culture, ethnicity, or national origin. Evidence that particular words or images are used exclusively or disproportionately in cases where the defendant is of a specific race, ethnicity, or national origin is relevant to determining whether language is discriminatory." (§ 745, subd. (h)(4).) Once the defendant has learned a violation under the RJA occurred, a motion should be made "as soon as practicable." (§ 745, subd. (c).) "After a judgment has been entered, if the court finds that a conviction was sought or obtained in violation of subdivision (a), the court shall vacate the conviction and sentence, find that it is legally invalid, and order new proceedings consistent with subdivision (a)." (§ 745, subd. (e)(2)(A).)

Effective January 1, 2024, a new provision to the RJA was added by the Legislature through Assembly Bill No. 1118 (2023–2024 Reg. Sess.) (Assembly Bill No. 1118), permitting a claim to be raised on direct appeal alleging a violation of section 745, subdivision (a), and authorizing a defendant to move to stay the appeal and request remand to the superior court to file a motion. (Stats. 2023, ch. 464, § 1; § 745, subd. (b).) However, "[t]he statute does not state that a defendant may raise a section 745 claim on direct appeal *for the first time* and does not refer to the general appellate rules governing

14.

the preservation or forfeiture of claims presented on direct appeal." (*People v. Lashon* (2024) 98 Cal.App.5th 804, 810 (*Lashon*); see Stats. 2023, ch. 464, § 1; § 745, subd. (b).)

### E. Defendant Forfeited His Racial Justice Act Claim

The general forfeiture rules apply to section 745 claims raised on direct appeal. (*People v. Singh* (2024) 103 Cal.App.5th 76, 113 (*Singh*); *Lashon*, *supra*, 98 Cal.App.5th at p. 812 ["a section 745 claim, like any other appellate claim, is subject to the general appellate rules of preservation and forfeiture of claims that could have been but were not made in the trial court"].) The court in *Lashon* considered the legislative history of the RJA and noted "the Legislature did not intend to allow a defendant to pursue such a claim for the first time on direct appeal where it could have been but was not raised in the trial court." (*Lashon*, at p. 813; see *Singh*, at p. 113 [the defendant forfeited his RJA claim for failure to raise it first in the trial court despite Assem. Bill No. 1118's amendment to § 745].)

We agree and apply these authorities to the instant case. Sonia's testimony and the prosecutor's comments about which defendant now complains occurred on June 25, 2024.[14] Defense counsel never filed a motion based on the RJA even though the trial in this case occurred over three years after the RJA became effective.

Defendant's objection under Evidence Code section 352 was insufficient to preserve his claim. Section 745 specifically applies to violations of the RJA, while Evidence Code section 352 dictates the trial court's discretionary power to exclude evidence that is more prejudicial than probative. (See, e.g., *People v. Hall* (1986) 41 Cal.3d 826, 834.)

Defendant's RJA claim is forfeited for failure to file a motion in the trial court. However, because defendant contends his counsel was ineffective for failure to object[15]

---

[14] The jury rendered a guilty verdict on July 8, 2024.

[15] The proper procedure is filing a motion "as soon as practicable" that a violation under the RJA occurred. (§ 745, subd. (c).) Defendant argues that his counsel was

on these grounds, we exercise our discretion to reach the merits of his contentions. (See *People v. Catlin* (2001) 26 Cal.4th 81, 131, fn. 11.)

## F. Defense Counsel Did Not Provide Ineffective Assistance for Failing To File an RJA Motion

As set forth above, to prevail on an ineffective assistance of counsel claim, the defendant must establish deficient performance and resulting prejudice. (*Strickland*, *supra*, 466 U.S. at p. 687.) "A claim of ineffective assistance of counsel based on a trial attorney's failure to make a motion . . . must demonstrate not only the absence of a tactical reason for the omission (*People v. Fosselman* (1983) 33 Cal.3d 572, 584), but also that the motion . . . would have been meritorious, if the defendant is to bear his burden of demonstrating that it is reasonably probable that absent the omission a determination more favorable to defendant would have resulted." (*People v. Mattson* (1990) 50 Cal.3d 826, 876.)

The record is silent as to why defense counsel failed to object or file such a motion.[16] However, defense counsel could have reasonably believed that the prosecutor's questions and Sonia's eyewitness testimony regarding defendant's race did not violate the RJA, particularly because the alleged comments were relevant to establish defendant's identity and did not show racial bias, either directly or indirectly. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 463 ["Representation does not become deficient for failing to make meritless objections."].) The prosecutor did not argue that race was a factor in finding defendant guilty nor was defendant's race a component in the trial proceedings. We also point out that during defendant's own testimony, he referred to the

---

ineffective for failing to make an "objection" based on a violation of the RJA. We assume for the sake of argument defendant contends that his counsel was ineffective for failing to bring a motion below.

[16] Claims of ineffective assistance on a silent record are more appropriately made in a petition for habeas corpus. (See, e.g., *People v. Dickey*, *supra*, 35 Cal.4th at p. 926.)

individual who allegedly discarded the white trash bag as an "African-American" man. Defendant fails to show how the prosecutor's questions and Sonia's statements he now complains of meet the definition of "racially discriminatory language" for purposes of section 745. (See, e.g., *People v. Stubblefield* (2024) 107 Cal.App.5th 896, 922 ["the prepositional phrase 'about the defendant's race' in [section 745,] subdivision (a)(2) implies a certain degree of focus, requiring more than just a passing reference"].)

There is also no prejudice on this record. (*Strickland*, *supra*, 466 U.S. at p. 694.) Under these circumstances, the trial court would not have found that alleged racial comments by the prosecutor established he "exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin," or was a use of "racially discriminatory language about the defendant's race, ethnicity, or national origin" such that it amounted to a violation of section 745, subdivision (a).[17] Defendant argues the prosecutor exhibited racial bias when he elicited testimony that defendant was a specific race, and a race that was consistent with that of the perpetrator. (§ 745, subd. (a)(1).) If true, this is "language that references the defendant's physical appearance, culture, ethnicity, or national origin." (§ 745, subd. (h)(4).) "Certainly, an officer (or other participant in the criminal justice process), observing that a defendant is Black, could 'unintentionally' treat them differently." (*Bonds v. Superior Court* (2024) 99 Cal.App.5th 821, 829.) However, there is no evidence that the prosecutor's statements, either implicitly or explicitly, showed racial bias.

The record shows a permissible purpose for the questions asked and fails to show that the prosecutor harbored express racial bias toward defendant. The prosecutor began

---

[17] To the extent defendant challenges Sonia's testimony regarding defendant's race, his contention fails per the plain language of the statute because Sonia is a lay witness. (§ 745, subd. (a)(1) [under the RJA, individuals involved in the case include "the judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror"].)

by confirming defendant was "African-American." He then stated that "all races" have "different skin tones" and asked Sonia whether defendant's skin tone appeared to be consistent with the skin tone of the robber. He also discussed other consistencies, such as defendant's age. When asked why Sonia thought defendant looked "familiar," she responded, "By his eyes." The questions by the prosecutor concerned defendant's identity and fall squarely within the exception in section 745, subdivision (a)(2).[18] We find no explicit racial bias.

We also fail to find implicit racial bias. (*Bonds v. Superior Court*, *supra*, 99 Cal.App.5th at p. 824 [a "central premise of the Racial Justice Act" is "that bias can be unconscious and implied as well as conscious and express"].) There were no further questions, evidence, or attorney argument which established that defendant was convicted of the crimes in this case because he was an "African-American" male. In *People v. Simmons* (2023) 96 Cal.App.5th 323, 336, the Second Appellate District held the prosecutor's comment violated section 745, subdivision (a) because it equated the defendant's "skin tone and 'ethnic presentation' with deception, implying that [the defendant] was not a credible witness because the color of his skin fooled women and confused strangers." The *Simmons* court found the suggestion that a witness is lying based on nothing more than his complexion is "baseless" and exactly the kind of racially biased language that section 745 targets. (*Simmons*, at p. 336; see *People v. Stubblefield*, *supra*, 107 Cal.App.5th at p. 923 [the prosecutor's closing argument, contending that the

---

**18** Section 745, subdivision (a)(2) states: "During the defendant's trial, in court and during the proceedings, the judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror, used racially discriminatory language about the defendant's race, ethnicity, or national origin, or otherwise exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin, whether or not purposeful. *This paragraph does not apply if the person speaking is relating language used by another that is relevant to the case or if the person speaking is giving a racially neutral and unbiased physical description of the suspect.*" (Italics added.)

defendant's race was a central factor in the explanation for the decision not to search the defendant's house for a firearm constituted "racially discriminatory language" in violation of the RJA].)  The facts of our case are not analogous.  Neither party urged the jury to convict defendant on that basis.

Defendant's reliance on *People v. McDonald* (1984) 37 Cal.3d 351, overruled by *People v. Mendoza* (2000) 23 Cal.4th 896, is misplaced.  In *McDonald*, our Supreme Court addressed the admissibility of expert testimony on the psychological factors that may affect the accuracy of eyewitness identification.  (*McDonald,* at p. 361.)  The case did not address the RJA or analyze questions by an attorney during trial that were relevant to identify the perpetrator.

There were also several other factors implicating defendant in the commission of the robbery that had nothing to do with his race.  Video surveillance captured a male wearing a FedEx shirt, hat, and satchel approaching Sonia's counter.  It also showed defendant handed Sonia a note, and she gave him a stack of bills that had a hidden tracker.  Law enforcement followed the tracker and identified a male that matched the robber's description driving a tan or gold car with the wrong license plate.  When defendant was apprehended soon after, law enforcement found the firearm, FedEx polo shirt, money, bank tracker, and the note he gave Sonia in his car.

Defendant fails to persuade us that had defense counsel made a timely motion asserting that the People violated the RJA, the motion would have been granted.  (See *Singh*, *supra*, 103 Cal.App.5th at p. 119.)  Defendant has not established either deficient performance or the resulting prejudice required to prevail on a claim of ineffective assistance of counsel.

## II.     Evidence of Prior Convictions

Defendant argues the trial court abused its discretion when it admitted evidence of his prior robbery convictions for impeachment and to show motive and intent under Evidence Code section 1101, subdivision (b).  He argues the evidence should have been

19.

excluded under Evidence Code section 352.  Defendant also contends the prosecutor's closing argument was prohibited under Evidence Code section 1101, subdivision (a) when he argued that it was defendant's " 'job' " to rob banks.  For these reasons, he maintains his convictions on counts 1 and 2 should be reversed.

The People argue the trial court did not abuse its discretion when it admitted defendant's prior convictions because he testified at trial putting his credibility at issue, the convictions were relevant to prove he had the motive and intent to commit the current robbery, and any error was harmless.  The People further contend that defendant forfeited his claim of prosecutorial misconduct, and even considering the argument, the prosecutor's statements were proper.  We agree with the People.

## A. Additional Background

Prior to trial, defense counsel requested that defendant's prior felony convictions be excluded if he chose to testify.  The trial court exercised its discretion under Evidence Code section 352 and allowed the prosecution to use no more than five prior felony convictions involving moral turpitude to impeach defendant if he chose to testify.  The prosecutor set forth the following convictions he intended to use:  felon in possession of ammunition from 2018; robbery from 2004; and three robberies from 1995.[19]

During trial, the prosecutor orally moved to admit all defendant's prior bank robbery convictions under Evidence Code section 1101, subdivision (b) because the allegations and manner of the robberies were like the instant case.  Defense counsel objected.  She moved to exclude defendant's prior convictions pursuant to Evidence Code section 1101, subdivision (b), arguing the offenses were remote, not sufficiently similar, and there was no identity, motive, intent, common plan, or absence of mistake to justify admission.

---

[19] The robberies occurred on October 29, 1993, and were disposed on August 11, 1995.

20.

The court informed defendant that if he testifies, the jury may hear that he has five felony convictions and one or more that were bank robberies. Defendant confirmed he still wanted to testify.

The parties set forth their arguments before the trial court regarding admission of the prior convictions under Evidence Code section 1101, subdivision (b) after defendant testified and before cross-examination. The court granted the prosecutor's request to admit the 1993 and 2002 robberies as evidence of motive and intent. The court exercised its discretion under Evidence Code section 352 and weighed the probative value of admitting defendant's prior convictions against the prejudicial effect. The court further stated it was aware of the different reasons evidence may be admitted under Evidence Code section 1101, subdivision (b). The court held that it would allow evidence of the 1993 and 2002 robberies because defendant went to banks and directed the tellers by way of a note to give him specific types of currency in larger denominations.

The jury was instructed they could use the uncharged crime evidence for the limited purpose of determining motive and intent, if they found the People proved defendant had committed the crimes by a preponderance of the evidence. They were told to consider the similarity or lack thereof between the charged and uncharged offenses and advised they could use the evidence for the limited purpose of determining defendant's credibility. They were instructed not to conclude from the evidence that defendant "has a bad character or is disposed to commit crime." They were further instructed this was only one factor to consider along with all the other evidence. (CALCRIM No. 375.)

During closing argument, the prosecutor argued defendant lied and had prior convictions when he testified that he was driving the speed limit. Defense counsel objected on the basis of improper argument. The trial court reminded the jurors that what the attorneys say is not evidence and advised the jurors to ignore misstatements of evidence.

After a brief recess, the prosecutor discussed how various witnesses were doing their "job" on the day of the robbery. He argued how defendant's job "is to rob banks." There was no objection from defendant's trial counsel.

**B. Admissibility of Prior Convictions To Prove Motive and Intent**

Trial courts have broad discretion in determining the admissibility of evidence, and we review challenges to the admission of evidence for abuse of discretion. (*People v. Jackson* (2016) 1 Cal.5th 269, 320–321.) Under this standard, the court's ruling " ' "will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286.)

Evidence of a defendant's conduct is generally inadmissible when offered to prove his or her conduct on a specified occasion. (Evid. Code, § 1101, subd. (a).) However, there is an exception to this rule under Evidence Code section 1101, subdivision (b), providing that prior crimes evidence may be admitted, " ' " 'when offered as evidence of a defendant's motive, common scheme or plan, preparation, intent, knowledge, identity, or absence of mistake or accident in the charged crimes.' " ' " (*People v. Scully* (2021) 11 Cal.5th 542, 586.) Evidence admitted under Evidence Code section 1101, subdivision (b) is also subject to analysis under Evidence Code section 352. (*People v. Thompson* (1980) 27 Cal.3d 303, 318.)

"Evidence of uncharged crimes is admissible to prove identity, common plan, and intent 'only if the charged and uncharged crimes are sufficiently similar to support a rational inference' on these issues." *(People v. Edwards* (2013) 57 Cal.4th 658, 711.) Proof of intent requires the least degree of similarity between the charged offense and the uncharged act. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) "In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." ' " (*Ibid*.) "Evidence is admissible for these purposes if there is 'sufficient evidence for the

jury to find defendant committed both sets of acts, and sufficient similarities to demonstrate that in each instance the perpetrator acted with the same intent or motive.' " (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 827.) On the issue of motive, the probative value of the prior crimes evidence "does not necessarily depend on similarities between the charged and uncharged crimes, so long as the offenses have a direct logical nexus." (*People v. Demetrulias* (2006) 39 Cal.4th 1, 15.)

Defendant maintains the evidence of his prior robbery convictions was relevant to show his poor character and propensity for crime, and thus inadmissible under Evidence Code section 1101, subdivision (a), which generally bars admission of character evidence to prove conduct on a specific occasion. We disagree. The evidence was relevant to show defendant's motive and intent when he robbed the Wells Fargo bank, uses permitted by Evidence Code section 1101, subdivision (b). (See *People v. Kipp* (1998) 18 Cal.4th 349, 369.) He contends that motive and intent were not at issue in the case. He is incorrect. Defendant flatly denied involvement in the robbery and thus all elements of the crimes were at issue; the prosecutor was required to prove these elements beyond a reasonable doubt. (See *People v. Whisenhunt* (2008) 44 Cal.4th 174, 204 [a defendant's plea of not guilty puts in issue all the elements of the charged offense].)

Defendant targeted banks in 1993 and 2002. In both cases defendant handed the teller a note that demanded money in large denominations and in at least one of the notes he indicated he had a gun. The similarity between the uncharged prior convictions and current charged offense provided a sufficient basis for the jury to conclude that defendant acted with the same criminal intent and motive, rather than by " 'accident or inadvertence or self-defense or good faith or other innocent mental state.' " (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 402.) The prior robberies also tended to show a logical nexus to the current offense, because a bank was robbed by way of presenting a note. (*Ibid.*; see *People v. Demetrulias*, *supra*, 39 Cal.4th at p. 15.) The evidence therefore was probative on the issues of motive and intent.

We also conclude the court did not abuse its discretion in determining the evidence was admissible under Evidence Code section 352. Evidence Code section 352 grants the trial court discretion to exclude the evidence if its probative value is substantially outweighed by undue prejudice. (*People v. Daveggio and Michaud*, *supra*, 4 Cal.5th at p. 824.) Factors that may be considered include: " '(1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses.' " (*People v. Culbert* (2013) 218 Cal.App.4th 184, 192.) " ' "[E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." ' " (*People v. Powell* (2018) 6 Cal.5th 136, 162–163.)

Here, the circumstances of the prior robberies, including defendant handing the teller a note demanding money made in connection with those robberies, were probative as to defendant's motive and intent, highly disputed issues at trial, and we cannot say it was substantially outweighed by the risk of undue prejudice.

The prior crimes were not more inflammatory than the charged conduct. (See, e.g., *People v. Foster* (2010) 50 Cal.4th 1301, 1332.) The evidence was largely introduced through defendant's testimony and did not consume a lot of time at trial. The focus of the testimony included the circumstances surrounding the robberies and what they had in common, by way of defendant's own statements and admitting the prior abstracts of judgment into evidence.

Turning to the remoteness factor, defendant's convictions could be characterized as remote since the earliest occurred in 1995, which would lessen their probative value. However, even a remote conviction is admissible where the defendant has not lived a

24.

legally blameless life in the interim. (*People v. Green* (1995) 34 Cal.App.4th 165, 183 [despite the age of a 20-year-old conviction, it was still admissible because the defendant did not subsequently lead a blameless life].) In this case, defendant did not live a legally blameless life. He suffered convictions in 1995, 2004, and 2018 prior to the instant offense. During that time, he also served three separate prison sentences. Not very long after release from prison did the next offense occur.

The danger of confusing the issues was minimal because the prior crimes resulted in convictions. (*People v. Branch* (2001) 91 Cal.App.4th 274, 284.) Further, the trial court's instructions to the jury under CALCRIM No. 375, advising the jury to consider such evidence not to prove defendant's predisposition to commit crimes also eliminated any likelihood of confusion.

In sum, defendant's prior offenses were probative of his motive and intent to rob banks, and, on a balance, when evaluating the other factors both individually and collectively, they did not weigh in favor of excluding the prior crimes. Rather, each factor tended to point toward admissibility. The record discloses the trial court thoroughly analyzed and weighed the relevant factors and acted within its broad discretion in determining the evidence was admissible.

## C. Impeachment with Prior Felony Convictions

Defendant also maintains the prior convictions were inadmissible for impeachment purposes because they did not add anything to the jury's assessment of his credibility. We disagree. By testifying, defendant put his credibility directly at issue.

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931.) Use of past misconduct for impeachment purposes is limited to the requirement that the past acts involve moral turpitude, but "[b]eyond this, the latitude [Evidence

Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad." (*People v. Wheeler* (1992) 4 Cal.4th 284, 296.)

"When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*People v. Clark*, *supra*, 52 Cal.4th at p. 931.) Courts should also assess whether the admission of impeachment evidence involves undue time, confusion of the issues, or prejudice outweighing probative value. (*Id*. at p. 932.)

The evidence at issue here, defendant's 1995 convictions for robbery, involved moral turpitude. (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925 [prior convictions for burglary, robbery, and other theft-related crimes are probative of the defendant's credibility]; *People v. Rodriguez* (1986) 177 Cal.App.3d 174, 178 [robbery "involves elements of dishonesty and a readiness to do evil"].) Defendant's convictions were probative on the issue of his credibility, a factor favoring admissibility of the priors. As previously stated, the remoteness factor would not mitigate against admission of the priors because defendant did not live a legally blameless life during the intervening period. (*People v. Green*, *supra*, 34 Cal.App.4th at p. 183.)

Prior convictions for the same offense are not automatically excluded but is a factor to be considered when the trial court exercises its discretion. (*People v. Mendoza*, *supra*, 78 Cal.App.4th at p. 926.) "[T]he admission of multiple identical prior convictions for impeachment is not precluded as a matter of law [citation], and a series of crimes may be more probative than a single crime . . . ." (*People v. Green*, *supra*, 34 Cal.App.4th at p. 183.) The prior convictions in this case were the same as the charged offense. Courts have held four similar prior convictions admissible for impeachment purposes. (*People v. Castro* (1986) 186 Cal.App.3d 1211, 1217.) Here, the series of

robberies were probative because they showed an overall picture of defendant's character for moral turpitude.  The jury also heard defendant's version of events regarding the prior convictions, which downplayed any negative emotional response from the jurors.  There was less danger of the jury confusing the issues because the prior offenses resulted in convictions, minimizing the prejudicial effect for impeachment purposes.  (See, e.g., *People v. Branch*, *supra*, 91 Cal.App.4th at p. 284.)  Finally, the admission of the priors had no effect on defendant's decision to testify.

Thus, the trial court's conclusion to admit the 1995 robbery convictions for impeachment purposes was sound.

## D.  Prosecutorial Misconduct

Defendant claims the prosecutor committed misconduct by offering evidence of his bad character, that he had a predisposition to rob banks, in violation of Evidence Code section 1101, subdivision (a).

Defendant's argument is forfeited on appeal for failure to object because "[a] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety." (*People v. Thornton* (2007) 41 Cal.4th 391, 454.)  Defendant argues his trial counsel preserved his appellate claim when she objected after the prosecutor told the jurors that defendant had five prior felony convictions and had a "clear motive to lie."  Defense counsel's objection however is insufficient to preserve defendant's claim because it was not on the same grounds now challenged.  (See, e.g., *People v. Sully* (1991) 53 Cal.3d 1195, 1248.)  Defendant forfeited his claim.  We nonetheless choose to reach the merits.

With respect to prosecutorial misconduct under the federal Constitution, the question is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " (*Darden v. Wainwright* (1986) 477 U.S. 168, 181.) A "prosecutor who uses deceptive or reprehensible methods commits misconduct even when those actions do not result in a fundamentally unfair trial" under state law. (*People v. Cook* (2006) 39 Cal.4th 566, 606.) "A criminal prosecutor has much latitude when making a closing argument." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1330.) "When attacking the prosecutor's remarks to the jury, the defendant must show, that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)

Viewed in the context of the prosecutor's whole argument, the statement that defendant's "job" was to rob banks was not improper. The prosecutor discussed the duties of all the witnesses. He told the jurors that the witnesses were asked "what their job was" at the time of the crime. The prosecutor turned to defendant's undertaking in the case and argued that it was his "job . . . to rob banks." He argued it was also defendant's job to make sure he got away at any cost. The prosecutor did not argue that defendant had a propensity for robbing banks but rather discussed the role defendant played in the robbery.

The trial court told the jury to follow its instructions on the law instead of the attorneys' arguments. The court also properly instructed the jury with the instruction on evidence of uncharged offenses, and the fact that they could not consider the prior convictions for any reason other than motive, intent, and assessing defendant's credibility. Given the court's instructions, defendant cannot demonstrate the prosecutor's argument

28.

misled the jury. "The court's instructions, not the prosecution's argument, are determinative . . . ." (*People v. Mayfield* (1993) 5 Cal.4th 142, 179.)

**E. Harmless Error**

Assuming for the sake of argument that the trial court abused its discretion in admitting evidence of defendant's prior crimes or the prosecutor's comments confused the jury, reversal is not required because the errors were harmless under either standard. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Sonia identified defendant in court. The robbery was captured on surveillance footage and shown to the jury, and they made their own comparisons between the footage and defendant's appearance sitting in the courtroom. Law enforcement located defendant by way of a tracking device found in the money and the physical description provided by Sonia. The tracker, money, note, gun, and clothes like those worn by the bank robber on the day of the robbery were found in his car. Though defendant denied involvement in the robbery and maintained he was innocently in the location of a bank when a person whom he did not know discarded the items and money from the robbery, his story was comparatively weak considering the other overwhelming evidence against him.

Moreover, with respect to defendant's challenge regarding his prior convictions that were used for impeachment purposes, defendant only challenges the admissibility of the 1995 convictions, but the trial court allowed the prosecutor to choose five convictions for impeachment. The other convictions could have been admitted even if the 1995 convictions were excluded.

The jury was given a limiting instruction which directed them not to use the uncharged robbery evidence to conclude defendant was of bad character or disposed to commit crimes. That instruction lessened any possibility that the jury would have relied on defendant's past robberies as improper propensity evidence. We presume the jury followed these instructions. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 83.)

29.

For all these reasons, any assumed error regarding admissibility of defendant's prior convictions or the prosecutor's argument under Evidence Code section 1101 is harmless beyond a reasonable doubt.

## III.    Firearm Enhancements

Defendant first contends there was insufficient evidence to support the personal use of a firearm enhancements on counts 1 and 2. He argues the evidence showed no more than he was armed and thus, the firearm enhancements on the first two counts must be reversed. In the alternative, defendant argues that if there was sufficient evidence of firearm use, it was based on improper modified jury instructions not supported by the record and prosecutorial misconduct. Defendant also argues the court had a sua sponte duty to instruct on the lesser included enhancement under section 12022, subdivision (a), and erred when it failed to do so.

The People respond the evidence was sufficient to support the jury's conclusion that defendant personally used a firearm under section 12022.53, subdivision (b). The People further maintain defendant forfeited his argument as to his claims regarding the modified jury instruction and prosecutorial misconduct; nonetheless, the instruction was proper and the prosecutor did not misstate the law.

We find the evidence sufficient to support the imposition of personal use of a firearm enhancement on counts 1 and 2. Further, we find the modified jury instruction proper and supported by evidence in the record, the prosecutor did not misstate the law, and there is no sua sponte duty to instruct on lesser included enhancements.

### A.  Additional Background

The jury was instructed with CALCRIM No. 3146, personal use of a firearm. The instruction was modified to include the following language: "A firearm is *displayed* when, by sensory perception, the victim is made aware of its presence. *Use* means 'to carry out a purpose or action by means of', or 'to make instrumental to an end or process,' or to 'apply to advantage.' "

During closing argument, the prosecutor stated as follows:

"A person uses a firearm if he intentionally does any of the following. Focus on one, displays the weapon in a menacing manner. In our bank robbery, [defendant] does not pull out the gun and wave it around. He didn't have to. The reason he didn't have to is because he gave Sonia a note that specifically told her he had a gun. The additional language, a firearm is displayed by a sensory perception. The victim is made aware of its presence. First line of the note, 'I have a gun.' He makes Sonia aware of the presence of the gun.

"What does 'use' mean? To make instrumental to an end, or process or apply to. That's what he's doing by saying, 'I have a gun.' Those are the elements I have to prove, that he displayed the weapon in a menacing manner . . . . Using that language, displayed it by the note that specifically says that I have a gun."

Outside the presence of the jury, the trial court made a record regarding the jury instructions. The court noted defense counsel's objection to the modified jury instruction. The objection was overruled because the court found it was based on *People v. Granado* (1996) 49 Cal.App.4th 317 (*Granado*) and "explains when a firearm is displayed . . . ."

Defense counsel offered no further objection.

## B. Sufficiency of the Evidence

On appeal where a claim of insufficient evidence is made to support an enhancement, the reviewing court uses the same standard we apply to a conviction. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.) We review the record in the light most favorable to the judgment to determine whether there is "substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Section 12022.53, subdivision (b) provides for "an additional and consecutive term of imprisonment in the state prison for 10 years" for "a person who, in the

commission of [specified felony offenses], personally uses a firearm." Robbery is among the specified felonies listed. (§ 12022.53, subd. (a)(4).)

Section 12022.5, subdivision (a) provides an "additional and consecutive term of imprisonment" to anyone who personally uses a firearm during the commission of a felony. While section 12022.5, subdivision (a) applies to personal firearm use during the commission of *any* felony, section 12022.53, subdivision (b) applies to personal firearm use during a specific list of felonies. Both section 12022.5, subdivision (a) and section 12022.53, subdivision (b) punishes the same conduct, personal use of a firearm; therefore, any violation of section 12022.53, subdivision (b) is also a violation of section 12022.5, subdivision (a). (*People v. Johnson* (2022) 83 Cal.App.5th 1074, 1085.)

The jury found defendant personally used a gun during the commission of the robbery in count 1 pursuant to section 12022.53, subdivision (b), and found personal gun use during the commission of the grand theft in count 2 (§ 12022.5, subd. (a)). The trial court imposed a 10-year enhancement on count 1.[20]

In interpreting section 12022.5, our Supreme Court concluded that the statute's legislative intent was to deter firearm use during the commission of a felony, requiring that the term " 'uses' be broadly construed." (*People v. Chambers* (1972) 7 Cal.3d 666, 672.) In so holding, the *Chambers* court explained, "[a]lthough the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. 'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.' " (*Ibid.*)

---

[20] The jury found defendant personally used a gun to support the section 12022.5, subdivision (a) enhancement on count 1 as well. Both enhancements on counts 1 and 2 pursuant to section 12022.5, subdivision (a) were stayed under section 654.

We apply the same statutory interpretation to "uses a firearm" in section 12022.53 as we do in section 12022.5. (*People v. Thiessen* (2012) 202 Cal.App.4th 1397, 1404; see *People v. Johnson*, *supra*, 83 Cal.App.5th at p. 1085.) "Use" means " 'something more than merely being armed.' " (*People v. Masbruch* (1996) 13 Cal.4th 1001, 1007.) The defendant "used a firearm" within the meaning of the section when the use furthers the completion of one of the essential elements of the crime. (*Id.* at p. 1011.) "Personal use of a firearm may be found where the defendant intentionally displayed a firearm in a menacing manner in order to facilitate the commission of an underlying crime." (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1059.)

There are differences between mere passive conduct with a weapon as opposed to "use" of a firearm during the commission of the crime. Defendant argues his case falls in the category of passive conduct since he did not display his gun, rather, the gun was only later found in his car. We disagree.

In *People v. Hays* (1983) 147 Cal.App.3d 534, 548, the defendant carried a rifle across his chest as he came down into the victim's office from the ceiling during the robbery, and the rifle was slung over his shoulder once he landed. The mere fact that the victim was scared by the defendant's rifle did not compel the conclusion he "used" it. (*Ibid*.) The *Hays* court found this only amounted to passive display of a gun rather than "use" within the meaning of section 12022.5, noting "a bare potential for use will not support a use enhancement . . . ." (*People v. Hays*, at pp. 548–549.)

In *Granado*, *supra*, 49 Cal.App.4th at pages 321 through 322, the court held the defendant was properly found to have used a gun within the meaning of section 12022.5, subdivision (a), even though the defendant did not point the gun at the victims or expressly threaten to use it. There, the defendant and a cohort approached two men and demanded money from them. (*Granado*, at p. 320.) The cohort pulled out a machete, causing one victim to run; the man with the machete chased after him. (*Ibid*.) At the same moment, the defendant pulled a gun from his waistband without pointing it at

anyone and demanded money from the remaining victim.  (*Id*. at pp. 320–321.)  The defendant was convicted of attempted robbery and personal use of a firearm against both victims.  (*Id*. at p. 321.)  On appeal, the defendant maintained the evidence was insufficient to establish the use enhancements.  (*Id*. at pp. 321–322.)  He argued that a mere display of the gun did not prove he had used it because it was not accompanied by something more.  (*Id*. at p. 322.)  He also argued that there was no evidence the victim who had run away had knowledge that a gun was present, therefore, the gun surely could not have been used against the victim that ran.  (*Id*. at p. 326.)

The *Granado* court rejected the defendant's first contention, noting that the term " ' "uses" ' " should be broadly construed to support the " 'obvious legislative intent to deter the use of firearms in the commission of the specified felonies . . . .' " (*Granado*, *supra*, 49 Cal.App.4th at p. 322.)  The court explained, "when a defendant deliberately shows a gun, or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim . . . so as to successfully complete the underlying offense, the jury is entitled to find a facilitative use rather than an incidental or inadvertent exposure."  (*Id*. at p. 325.)

The *Granado* court also rejected the assertion that the second victim had to have been actually put in fear by the defendant's gun-related conduct for the enhancement to apply, reasoning:  "To excuse the defendant from this consequence merely because the victim lacked actual knowledge of the gun's deployment would limit the statute's deterrent effect for little if any discernible reason.  [Citation.]" (*Granado*, *supra*, 49 Cal.App.4th at p. 327.)  The only mental state requirement imposed on section 12022.5, subdivision (a) enhancements "is the *defendant's intent* to use the gun in furtherance of the crime."[21]  (*Granado*, at p. 328.)  Thus, firearm "use" is established if "the defendant

---

[21] The *Granado* court construed the personal use enhancement set forth in section 12022.5, however, as set forth above, the statute's terms have also been used to determine

personally deployed the weapon, or acted as if to do so, in furtherance of the crime." (*Id.* at p. 330.)

In *People v. Colligan* (1979) 91 Cal.App.3d 846, 849, during the commission of a robbery, the defendant showed the victim the handle of his gun and told her to "be quiet, that he had a gun, and that he didn't want to use it." The victim gave the defendant her money because she "feared for her life and safety . . . ." (*Ibid.*) During trial the victim could not sufficiently identify a weapon and no gun was admitted into evidence. (*Ibid.*) Nonetheless, the court found the comment that the defendant did not want to use the gun on the victim implied the fact that he would use the gun on the victim if she failed to comply, which caused the victim to be fearful and comply with his demands. (*Id.* at p. 851.) The *Colligan* court concluded: "It would be fatuous to conclude under these circumstances that the gun was not 'used' in the commission of the robbery." (*Ibid.*)

Here, defendant approached Sonia carrying a satchel and gave her a note that read, "I have a gun." The note demanded large bills. At one point, defendant demanded more money from Sonia. While Sonia did not see the gun, defendant's note stating he had a gun, coupled with his satchel, verbal and written demands for money, clearly indicated to Sonia that he had one. Sonia feared for her life if she failed to comply with defendant's demands. Soon after the robbery was completed, law enforcement found a functional firearm on the floorboard of defendant's car.

Relying on *People v. Jacobs* (1987) 193 Cal.App.3d 375, defendant argues that the gun was not displayed because Sonia did not see or hear it, and there was no other "sensory perception" that he had a gun.

In *Jacobs*, the defendant told the victim he had a gun. The defendant reached in his jacket and cocked what sounded like a gun. (*People v. Jacobs*, *supra*, 193 Cal.App.3d

---

whether a defendant personally used a gun within the meaning of section 12022.53. (*People v. Mason* (2002) 96 Cal.App.4th 1, 12–14.)

35.

at p. 379.)  However, the victim never saw the gun.  (*Ibid*.)  The *Jacobs* court determined that this conduct was sufficient to support a finding the firearm was displayed stating "a firearm is displayed when, by sensory perception, the victim is made aware of its presence."  (*Id.* at p. 381.)

Although "sensory perception" is one way to prove firearm "use" for the enhancement to apply, making the presence of a weapon known for the sole purpose of intimidating the victim so the defendant can complete the underlying felony also establishes firearm "use."  (*Granado*, *supra*, 49 Cal.App.4th at p. 325.)

In *People v. Jones* (2021) 65 Cal.App.5th 1, the defendant approached the victim and her granddaughter holding a gun in the front pocket of his sweatshirt and told the victim, " '[D]on't scream, don't do nothing stupid, just do whatever I say and nothing is going to happen to you or the baby.' "  (*Id.* at p. 8.)  The victim did not see or hear the gun, however, the defendant's gesturing to his pocket indicated to the victim that he had a gun; the victim feared for her life and the life of her granddaughter and complied with the defendant's demands.  (*Ibid*.)  The defendant was found guilty of using a firearm during the commission of a robbery within the meaning of section 12022.53, subdivision (b). (*People v. Jones*, at p. 4.)  The defendant appealed, arguing that there was not substantial evidence to prove he used a gun because he did not display the gun in a menacing fashion.  (*Id*. at p. 7.)

The *Jones* court held that "[section 12022.53, subdivision (b)] does not require the victim to have seen, heard, or felt the gun itself.  What the enhancement requires is a facilitative use of the gun . . . ."  (*People v. Jones*, *supra*, 65 Cal.App.5th at p. 8.) Relying on *Granado*, the *Jones* court stated:  "what is required is not awareness of the weapon's presence on the part of the victim, but rather 'facilitative, weapon-related conduct' on the part of the defendant."  (*Id*. at p. 9.)  The court concluded that the defendant employed the gun in his pocket in furtherance of the offenses of kidnapping and robbery by merely gesturing to the victim with the gun in his pocket, telling the

36.

victim that he had a gun, and telling her to do what he said and nothing would happen to her or the baby. (*Id*. at pp. 9–10.)

We find the facts of our case analogous to the holdings in *Granado* and *Jones*. Defendant's gun-related conduct constituted an affirmative act in furtherance of a crime. This did not amount to mere passive display of a gun like in *People v. Hays*, *supra*, 147 Cal.App.3d at pages 548 through 549. Defendant's threat that he had a gun in his possession was intentional and advanced the commission of the robbery.

Substantial evidence supports the conclusion defendant used a firearm during the commission of the robbery within the meaning of section 12022.53, subdivision (b).

## C. Failure To Instruct on a "Lesser Included Enhancement"

Defendant argues the trial court erred in failing to instruct, even without a request by counsel, on the so-called "lesser included enhancement," being armed with a firearm in violation of section 12022, subdivision (a). He contends that the court's sua sponte duty to instruct on a lesser included offense extends to lesser included enhancements, and that the trial court's failure to instruct on the lesser included enhancement was a violation of due process. His contention lacks merit.

A trial court's sua sponte obligation to instruct on lesser included offenses is not extended to " 'lesser included enhancements.' " (*People v. Majors* (1998) 18 Cal.4th 385, 410.) A trial court has a duty to sua sponte instruct on lesser included offenses because there is a "risk the jury will convict on the charged offense even though one of the elements remains in doubt because ' "the defendant is plainly guilty of *some* offense." ' " (*People v. Vasquez* (2018) 30 Cal.App.5th 786, 798.) This risk is not present when the jury considers sentence enhancements because a jury does not consider the enhancements unless it has already convicted the defendant of the underlying offense. (*Majors*, at p. 410; see *People v. Dennis* (1998) 17 Cal.4th 468, 500.)

Defendant cites three cases in support of his assertion that the allegation of a firearm use enhancement requires instruction on an arming enhancement. The cited cases

do not support that conclusion. In *In re A.L.* (2015) 233 Cal.App.4th 496, 503–504, the court held the juvenile court did not abuse its discretion in permitting the late amendment of the delinquency petition to show that a minor was armed with a firearm in the commission of a felony within the meaning of section 12022, subdivision (a)(1), rather than, as alleged in the petition, the minor personally used a deadly or dangerous weapon, within the meaning of section 12022, subdivision (b)(1). In *People v. Allen* (1985) 165 Cal.App.3d 616, the court found insufficient evidence to sustain the jury's findings of personal use of a weapon within the meaning of section 12022.5, but found sufficient evidence within the meaning of section 12022, subdivision (a), and so reduced the findings accordingly. (*People v. Allen*, at pp. 626–627.) In *People v. Fialho* (2014) 229 Cal.App.4th 1389, the jury found true a section 12022.53, subdivision (d) enhancement. It also convicted the defendant of voluntary manslaughter and attempted voluntary manslaughter. Since section 12022.53, subdivision (d), does not apply to either voluntary manslaughter or attempted voluntary manslaughter, the trial court imposed enhancements under section 12022.5, subdivision (a) even though such enhancements were not alleged in the information. The court found this imposition proper. (*People v. Fialho*, at pp. 1398–1399.)

There was no obligation on behalf of the trial court to instruct on the "lesser included enhancement."

### D. Modified Jury Instruction

Defendant argues the modified CALCRIM No. 3146 provided to the jury was not supported by evidence in the record. Specifically, defendant takes issue with the following sentence: "A firearm is *displayed* when, by sensory perception, the victim is made aware of its presence." He maintains the sentence is ambiguous and the term "sensory perception" was improperly used because Sonia did not see or hear the gun, she was only shown a written threat in a note.

Claims of instructional error are reviewed de novo. (*People v. Johnson* (2009) 180 Cal.App.4th 702, 707.) Our task is to review the instructions given as a whole and the entire trial record to determine "whether the jury was 'reasonably likely' to have construed them in a manner that violates the defendant's rights." (*People v. Rogers* (2006) 39 Cal.4th 826, 873.) " 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

If a jury instruction is ambiguous, the reviewing court asks whether there is a reasonable likelihood that the jury misunderstood the instruction. (*People v. Smithey* (1999) 20 Cal.4th 936, 963.) In assessing the "probable impact" of the instruction on a jury, the reviewing court should assess the arguments of counsel. (*People v. Young* (2005) 34 Cal.4th 1149, 1202.)

"A trial court must instruct the jury on every theory that is supported by substantial evidence, that is, evidence that would allow a reasonable jury to make a determination in accordance with the theory presented under the proper standard of proof." (*People v. Cole* (2004) 33 Cal.4th 1158, 1206.) There is no instructional error when the record contains substantial evidence to support a guilty verdict based on the theory challenged. (*Ibid*.)

### 1. Defendant's Claim Is Forfeited

A defendant's claim is forfeited for failure to make a timely and specific objection on the same ground he raises on appeal. (*People v. Pearson* (2013) 56 Cal.4th 393, 416.) The parties' full discussion regarding the jury instructions are not part of this record on appeal. While the trial court noted defense counsel's objection to the modified jury instruction, the record is unclear regarding the reason. The court stated that the objection was "overruled" because the modification was based on a correct statement of law. Defense counsel offered no further objection or explanation. On this record, it cannot be ascertained whether defense counsel specifically objected on the grounds now raised, and

thus, we will give defendant the benefit of the doubt and find the issue preserved for appeal.

### 2. The Modification Was Not Error

The trial court modified CALCRIM No. 3146, the standard jury instruction for use with a sentencing enhancement allegation under section 12022.53, subdivision (b), to provide further information on the element of displaying and using a firearm. The instruction explains that "[s]omeone *personally uses* a firearm if he or she intentionally does any of the following: [¶] 1. Displays the weapon in a menacing manner; [¶] 2. Hits someone with the weapon; [¶] OR [¶] 3. Fires the weapon." (CALCRIM No. 3146.) The court modified the language concerning the display of the weapon to add: "A firearm is *displayed* when, by sensory perception, the victim is made aware of its presence. *Use* means 'to carry out a purpose or action by means of', or 'to make instrumental to an end or process,' or to 'apply to advantage.' "

The trial court's modification is an appropriate clarification of CALCRIM No. 3146's definition of "firearm use" to conform to the facts of this case. (See, e.g., *People v. Chambers*, *supra*, 7 Cal.3d at p. 672; *Granado*, *supra*, 49 Cal.App.4th at pp. 322, 325; *People v. Jacobs*, *supra*, 193 Cal.App.3d at p. 381.)

The modification aligns with the Supreme Court's conclusion that "use" be given an expansive construction. (*People v. Chambers*, *supra*, 7 Cal.3d at p. 672.) The definition of the term "[u]se" (italics omitted) in the modified instruction comes directly from *Chambers*, requiring the term be broadly construed to comport with the legislative intent to deter the use of firearms in the commission of the specified felonies.[22] (*People v. Chambers*, at p. 672.)

---

[22] The *Chambers* court recognized that "there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. 'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make

40.

The instruction as modified correctly states the law and the language was supported by the record, where defendant did not visually display a gun but made Sonia aware of its presence to intimidate her so that the robbery could be completed.

Defendant argues the modification was misleading to the jury because the reference to a gun was based on a written note and there was no "sensory perception." But defendant fails to view the instructions as a whole. Taken together, the modified instructions properly clarified the meaning of the terms "displayed" and "[u]se" for the jury's determination of whether a firearm was used for the purpose of the firearm enhancement. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088 [when considering the instructions given as a whole, we " ' "assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given" ' "].)

We conclude the jury was not misled.

Even assuming error, there was no reasonable probability of a different result in the absence of the term "sensory perception." (See, e.g., *People v. Ervin* (2000) 22 Cal.4th 48, 91 [harmless error test used when assessing whether the defendant suffered prejudice by the use of pinpoint instructions].) The court also instructed the jury that "*Use* means 'to carry out a purpose or action by means of', or 'to make instrumental to an end or process,' or to 'apply to advantage.' " Thus, the jury could have reasonably concluded that the firearm enhancement applied because defendant presented Sonia with the note indicating he had a gun, for no purpose other than to scare her into giving him the money from her register. The jury could find the firearm enhancement true even though Sonia did not see, hear, or feel the gun. (See, e.g., *People v. Jones*, *supra*, 65 Cal.App.5th at p. 8; *Granado*, *supra*, 49 Cal.App.4th at p. 325.)

---

instrumental to an end or process,' and to 'apply to advantage.' " (*People v. Chambers*, *supra*, 7 Cal.3d at p. 672.)

It was not reasonably probable the jury would have reached a different verdict had the court not used the term "sensory perception" in the modified jury instruction. (See *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

### E. Prosecutorial Misconduct

We also reject defendant's assertion that it was a misstatement of the law when the prosecutor argued that the written note "I have a gun" amounted to "sensory perception." " 'When a claim of misconduct is based on the prosecutor's comments before the jury, " 'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' " ' " (*People v. Rivera* (2019) 7 Cal.5th 306, 334.) "Prosecutorial misconduct can result in reversal under state law if there was a 'reasonable likelihood of a more favorable verdict in the absence of the challenged conduct' and under federal law if the misconduct was not 'harmless beyond a reasonable doubt.' " (*Ibid*.)

### 1. Defendant Forfeited This Claim

"To preserve a claim of prosecutorial misconduct during argument, a defendant must contemporaneously object and seek a jury admonition." (*People v. Bonilla* (2007) 41 Cal.4th 313, 336.) Defendant did not do this. On appeal, he asserts he objected to the modified jury instruction. Such an objection, however, is not a contemporaneous objection to a prosecutor's statements in argument. Defendant's claim is forfeited.

### 2. Ineffective Assistance of Counsel

To avoid forfeiture, defendant argues his counsel was ineffective for failure to object during the prosecutor's closing argument.[23]

---

[23] There is nothing on the record which shows defense counsel's reason for not objecting. Where the record is silent regarding why counsel acted or failed to act in the manner challenged, these cases are affirmed on direct appeal "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation . . . ." (*Pope*, *supra*, 23 Cal.3d at p. 426.)

First, there was no misconduct by the prosecutor. Defendant argues that "[b]y claiming to the jury that the written message, 'I have a gun,' provided a 'sensory perception' within the meaning of the jury instruction, the prosecutor misinterpreted the law and took advantage of an ambiguous instruction."

The prosecutor first commented on the language which refers to a gun being displayed by "sensory perception," and thereafter argued that Sonia was aware of the gun's presence by the note. The prosecutor did not suggest that "sensory perception" meant the written note. Our conclusion is corroborated by the prosecutor's next statement, which accurately defined the term firearm "use," and argued defendant "displayed the weapon in a menacing manner" by handing Sonia a note that said: "I have a gun." There is no support for defendant's assertion that the prosecutor told jurors the use enhancement was satisfied by way of "sensory perception" in a written note.

Second, even if there were misconduct, defendant was not prejudiced by trial counsel's failure to object. (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1325 [the reviewing court does not need to decide whether counsel's performance was deficient before considering the prejudice suffered by the defendant, " ' "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed" ' "].)[24] "[W]here a defendant shows prosecutorial misconduct occurred, reversal is not required unless the defendant can show he suffered prejudice."[25]

---

[24] There is nothing on the record which shows defense counsel's reason for not objecting. Where the record is silent regarding why counsel acted or failed to act in the manner challenged, these cases are affirmed on direct appeal "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation . . . ." (*Pope, supra,* 23 Cal.3d at p. 426.)

[25] We also note defendant fails to address prejudice or present any facts which show the substantial likelihood of a different result. (*People v. Zemek* (2023) 93 Cal.App.5th 313, 332–333 [a defendant must show a reasonable probability that he would have received a more favorable result had counsel's performance not been deficient in order to demonstrate prejudice].)

(*People v. Fernandez* (2013) 216 Cal.App.4th 540, 564.) "*Chapman* [*v. California, supra*, 386 U.S. 18] is implicated if the prosecutor's conduct renders the trial so fundamentally unfair that due process is violated. [Citations.] [*People v.*] *Watson*[, *supra*, 46 Cal.2d 818] applies where the prosecutor uses ' " 'deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' " (*Ibid.*)

The jury was presented with the facts, including defendant's version of what transpired during the robbery. Defendant maintained he did not rob the bank. He was not aware that a firearm was in his vehicle. During closing argument, defense counsel reiterated the theory and argued that defendant did not have a firearm because no one saw one during the robbery. The jury considered this evidence and their verdict indicates that they rejected these contentions.

Sonia became aware that defendant had a gun when he presented her with a note that stated, "I have a gun," which occurred within the context of defendant's threatening behavior. The note and gun were later found in defendant's car. Although Sonia did not see a gun, there can be no question that defendant's conduct amounted to a "menacing manner" of the gun to facilitate a robbery.

Defendant's ineffective assistance of counsel claim fails.

## IV.    Aggravating Factors

The trial court found six aggravating factors true. Defendant argues that the evidence was insufficient to support one of those factors: that the robbery involved a taking of great monetary value. In the alternative, he argues this factor is unconstitutionally vague and lacks notice. He also argues two other aggravating factors: prior convictions that are numerous or of increasing seriousness, and violent conduct which indicates a serious danger to society, were improperly imposed because the trial court made use of dual facts.

Defendant further argues that, if trial counsel's objections to the trial court's use of aggravating factors were insufficient, she was ineffective.

We find sufficient evidence to support a taking of great monetary value. We also reject defendant's unconstitutional vagueness and notice claims. We further reject defendant's arguments that the trial court relied on dual facts to impose the other two aggravating factors.

## A. Additional Background

Defendant waived his right to a jury trial on the alleged aggravating factors and prior convictions.

At a bifurcated trial on the aggravating circumstances, the prosecutor submitted on the evidence, including defendant's section 969b packet containing a certified record of prior criminal convictions. Defendant's counsel argued that the trial court should not find that defendant was armed with or used a weapon during the commission of the crime, because the firearm use was part of the crime itself. The court agreed that utilization of that circumstance would constitute a dual use of facts and found that circumstance not true. The trial court then found six aggravating factors true: those alleged under rules 4.421(a)(8) (the manner in which the crime was carried out indicates planning, sophistication, or professionalism), 4.421(a)(9) (the crime involved an attempted or actual taking of great monetary value), 4.421(b)(2) (defendant's prior convictions as an adult are numerous or of increasing seriousness), 4.421(b)(3) (defendant has served a prior term in prison), 4.421(b)(5) (defendant's prior performance on misdemeanor probation was unsatisfactory), 4.421(b)(1) (defendant has engaged in violent conduct that indicates a serious danger to society).

Senate Bill No. 567 (2021–2022 Reg. Sess.) amended section 1170, subdivision (b) effective January 1, 2022. (Stats. 2021, ch. 731, § 1.3.) Section 1170, subdivision (b)(2) now provides: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a

reasonable doubt at trial by the jury or by the judge in a court trial." A trial court may rely on certified records of conviction to determine prior convictions without submitting the matter to a jury. (§ 1170, subd. (b)(3).)

The California Rules of Court also provide guidance on how the court must exercise discretion. For imposition of the upper term, rule 4.420(b) now provides: "The court may only choose an upper term when (1) there are circumstances in aggravation of the crime that justify the imposition of an upper term, and (2) the facts underlying those circumstances have been (i) stipulated to by the defendant, (ii) found true beyond a reasonable doubt at trial by a jury, or (iii) found true beyond a reasonable doubt by the judge in a court trial."

It is required under section 1170, subdivision (b)(2), that "excepting prior convictions and in the absence of a waiver or stipulation, aggravating facts relied upon to justify an upper term must be resolved by the jury beyond a reasonable doubt." (*People v. Lynch* (2024) 16 Cal.5th 730, 755 (*Lynch*).) A Sixth Amendment violation occurs when there are aggravating factors relied on by the trial court that were not properly proved under section 1170, subdivision (b), even if some other aggravating factors relied on by the trial court were correctly established. (*Lynch*, at p. 768.) "The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt" that the error was harmless under *Chapman v. California*, *supra*, 386 U.S. 18. (*Lynch*, at p. 768.)

## B. Great Monetary Value

### 1. Amount

Defendant challenges the sufficiency of the evidence arguing the amount of money he took from the bank was not of great monetary value. (Rule 4.421(a)(9).) We are not persuaded.

An aggravating factor finding is reviewed for substantial evidence. (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1775.) Substantial evidence is evidence that is "reasonable, credible, and of solid value—such that a reasonable trier of fact could find

the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

The evidence shows that, when defendant was apprehended by law enforcement, $3,080 was found in his car, the same amount missing from the bank. That value is greater than the $950 threshold for grand theft. (§ 487, subd. (a).) The court did not err in concluding this sum was of great monetary value. (*People v. Wright* (1982) 30 Cal.3d 705, 708–709 [losses of $2,300 and $3,250 qualified as great monetary value]; cf. *People v. Berry* (1981) 117 Cal.App.3d 184, 197 [a loss of $450 is not of great monetary value].)

## 2. Vagueness

Defendant maintains the term "great monetary value" is unconstitutionally vague and violates constitutional notice guarantees.

Defendant asserts the aggravating factor " 'great monetary value' " is vague because the judicial " 'fleshing out' " process has not been completed with respect to that term. (*Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65, 88 (*Chavez Zepeda*) ["[i]mprecise standards can be fleshed out by judicial construction"]; *People v. Borrelli* (2000) 77 Cal.App.4th 703, 721 [requisite standards of certainty can be fleshed out from otherwise vague statutory language by reference to commonly accepted usage, common law, judicial interpretations of the statutory language or of similar language, and legislative history or purpose].) But courts have considered the term great monetary value, and determined, as set forth above, losses of more than $2,300 are recognized as being of great monetary value. (*People v. Wright, supra*, 30 Cal.3d at pp. 708–709.)

In *Chavez Zepeda*, a case defendant relies on, the court found that aggravating circumstances are not unconstitutionally vague even when the factor uses undefined qualitative terms, such as "great violence," "high degree of cruelty, viciousness, or callousness," "particularly vulnerable," and "serious danger." (*Chavez Zepeda, supra*, 97 Cal.App.5th at pp. 71, 86–88, 91–92; see rule 4.421(a)(1), (3), (9), (b)(1).) Although the court did not expressly address the term "great monetary value" in its analysis, nothing

47.

suggests that factor is unconstitutionally vague merely because it includes a qualitative standard. As *Chavez Zepeda* explained, the aggravating factors under rule 4.421 are not unconstitutionally vague because they "do not attempt to define specific criminal offenses, and the sentencing judge's ultimate discretion remains a meaningful safeguard." (*Chavez Zepeda*, at p. 87.)

### 3. Notice

Here, defendant was provided notice of aggravating factors by way of the information filed against him and the recommendations outlined in his probation report. He was also advised of his right to a jury trial on the aggravating factors and expressly waived this right. This was sufficient to put defendant on notice that he may be subjected to "wrongfulness beyond that inherent in the commission of the offense" as identified in rule 4.421(a) and (b). (*Chavez Zepeda*, *supra*, 97 Cal.App.5th at p. 91.)

### C. Other Aggravating Factors and Dual Use of Facts

Defendant contends the trial court relied on dual use of facts to impose aggravating factors based on his numerous prior convictions and violent conduct (rule 4.421(b)(1), (2)).[26]

Defendant forfeited this contention by not making this objection below. (*People v. de Soto* (1997) 54 Cal.App.4th 1, 9 [failure to specifically object to the court's dual use of facts at sentencing forfeited the issue on appeal]; see *People v. Gonzalez* (2003) 31 Cal.4th 745, 755.) However, because defendant contends his counsel was ineffective for failure to raise the claims below, we address the merits and conclude that the court did not err. (*People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing court may exercise discretion to consider forfeited claims to forestall ineffective assistance of counsel arguments].)

---

[26] We note defendant does not argue there is insufficient evidence to support these factors.

A trial court "generally cannot use a single fact both to aggravate the base term and to impose an enhancement, nor may it use a fact constituting an element of the offense either to aggravate or to enhance a sentence." (*People v. Scott, supra*, 9 Cal.4th at p. 350; see § 1170, subd. (b)(5) ["[t]he court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law"]; rule 4.420(g), (h).)

### 1.      Prior Convictions That Are Numerous or of Increasing Seriousness

Defendant complains the trial court impermissibly used the same fact, his prior serious felony conviction, to impose his sentence under the "Three Strikes" law (§ 667, subd. (e)), to impose a serious felony enhancement (§ 667, subd. (a)), and to find an aggravating circumstance (rule 4.421(b)(2)). We disagree.

The statute governing habitual criminals under the Three Strikes law does not prohibit dual use of the same prior felony conviction for purposes of the Three Strikes law because that law is a " 'sentencing scheme for specifically described recidivists' " and is not an enhancement. (*People v. Nelson* (1996) 42 Cal.App.4th 131, 141; see *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1138–1139 [serious felony convictions may be used both as qualifying priors for the indeterminate term and as enhancements in calculating the determinate sentence]; *People v. Sipe* (1995) 36 Cal.App.4th 468, 485–487 [an enhancement under § 667, subd. (a) is an additional term of imprisonment added to the base term as opposed to § 667, subd. (e), which is an alternative sentencing scheme, and thus, a defendant can be sentenced under the Three Strikes law and have their sentence enhanced based on the same prior felony conviction]; *People v. Anderson* (1995) 35 Cal.App.4th 587, 595 [sentencing court may use qualifying prior conviction to double base term and impose an enhancement because it is a result dictated by "a parallel sentencing scheme for specifically described recidivists"].) Thus, the Three Strikes law may apply even when serious felony conviction enhancements are also imposed.

49.

The trial court also did not err when it imposed a prior serious felony enhancement—based on defendant's prior robbery conviction—and found true that his prior convictions were numerous or of increasing seriousness. Defendant suffered 15 prior convictions. The court's reliance on defendant's numerous prior convictions as an aggravating circumstance was based on his certified RAP sheet and section 969b packet. Defendant cites no legal authority, nor are we aware of any, which states that the court cannot use a criminal defendant's prior serious felony conviction when imposing an enhancement and finding an aggravating factor true, when the defendant validly waived his right to a jury trial on those factors, and his convictions were based on a certified court document. Even if there was legal authority supporting defendant's contention, it is reasonable to conclude the court relied on his multiple other convictions when it found that defendant's crimes were numerous.

The court properly considered the aggravating circumstance that defendant's prior convictions were numerous or of increasing seriousness when it sentenced him.

### 2. Violent Conduct Indicating a Serious Danger to Society

Defendant argues the trial court made a dual use of facts when it used the aggravating factor under rule 4.421(b)(1), that he engaged in violent conduct that indicates a serious danger to society because it was based on his prior robbery conviction that was separately punished.

Defendant cites *People v. Williams* (1986) 180 Cal.App.3d 57, 63, where the reviewing court remanded the case for resentencing because the court imposed a five-year prior serious felony enhancement based on the defendant's "pattern of violent conduct" stemming only from a prior armed robbery conviction (see §§ 211, 667, subd. (a); see also rule 4.421(b)(1).) The *Williams* court found that the trial court's language showed that "the aggravated sentence was imposed because of the prior armed robbery conviction and the pattern of violent conduct." (*People v. Williams*, at p. 63.)

Rule 4.421(b)(1) relates to whether defendant engaged in violent conduct that indicates a serious danger to society; not to his prior convictions. There is nothing to suggest the trial court imposed this aggravating circumstance solely on defendant's prior robbery conviction. The court considered the circumstances of the current offense when it found defendant poses a significant danger to the community.

### D. Ineffective Assistance of Counsel

Because we have concluded that the trial court did not err, we also conclude that defense counsel was not deficient for any failure to object. (*Strickland*, *supra*, 466 U.S. at p. 687; see *In re Welch* (2015) 61 Cal.4th 489, 516.)

### V. Upper Term Sentence

Defendant reiterates his argument that the great monetary value circumstance is unconstitutionally vague and not supported by the evidence, and his argument that use of the numerous prior convictions and of the violent conduct circumstances constitute a dual use of facts. We have rejected these arguments, *ante*.

Defendant admits that he is not challenging the prior prison term circumstance (rule 4.421(b)(3)) or the unsatisfactory performance on misdemeanor probation (rule 4.421(b)(5)).

Defendant then contends the trial court abused its discretion in imposing the upper term sentence for defendant's conviction of felony evading a police officer because, although the trial court stated the aggravating circumstances it was using in sentencing, it did not specify which ones it was using to impose the upper term on that count. He asserts that circumstances of rule 4.421(a)(8) (the manner in which the crime was carried out indicates planning, sophistication, or professionalism) and rule 4.421(a)(9) (the crime involved a taking of great monetary value) did not apply to this particular conviction. He does not cite to authority to support this specific argument. Instead, he cites to *Lynch*, *supra*, 16 Cal.5th 730, arguing that the aggravating factors be proved. The People respond the factors in aggravation were properly found true by the trial court and

defendant has a lengthy criminal history and is clearly a danger to society which makes the upper term appropriate.

**A. Defendant's Sentence Did Not Violate the Holding in *Lynch***

In *Lynch*, our Supreme Court held that where a trial court applied a former version of section 1170, subdivision (b), and relied on facts not proved in compliance with section 1170, subdivision (b) to impose the upper term, the sentence must be vacated and the matter remanded unless we conclude beyond a reasonable doubt that the jury would necessarily have found the facts underlying all circumstances in aggravation relied upon by the trial court true beyond a reasonable doubt. (*Lynch*, *supra*, 16 Cal.5th at pp. 742–743, 761.)

Here, sentencing took place after section 1170, subdivision (b) was amended, and, as discussed, *post*, all the aggravating factors were proved in compliance with the amended statute. Defendant's sentencing was not inconsistent with the holding in *Lynch*.

**B. Compliance with Amended Section 1170**

Imposition of an upper term sentence is prohibited unless aggravating circumstances justify the upper term and the facts underlying those circumstances, other than a prior conviction, have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. (§ 1170, subd. (b)(2).) Thus, "a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*People v. Wiley* (2025) 17 Cal.5th 1069, 1086.) The court may adjudicate such aggravating facts by way of a jury trial or a court trial if the defendant waives his right to a jury trial. (*Ibid.*)

Defendant expressly waived his right to a jury trial and stipulated to a bifurcated court trial on his prior convictions and the alleged aggravating factors.[27] The trial court found six aggravating factors true.

Defendant argues the court committed federal constitutional error subject to review under *Chapman* because the court's use of the improperly found factors to impose the upper term violated his due process right to have all facts used to impose a higher sentence proved beyond a reasonable doubt. (Rule 4.421(a)(9), (b)(1), (b)(2).) But this argument fails because these factors were found true beyond a reasonable doubt by the court in a bench trial to which defendant consented. (See *People v. Wiley*, *supra*, 17 Cal.5th at p. 1084 ["[A]ny fact . . . that exposes a defendant to harsher punishment, must be found by a jury beyond a reasonable doubt, unless the defendant stipulates to its truth or waives a jury trial."].)

We also find the trial court's discretion was sound when it found the aggravating factors true.[28] The People submitted exhibits into evidence including defendant's certified RAP sheet and a certified packet of prior convictions under section 969b. The court found all prior conviction allegations true, including eight prior strikes and two serious or violent felonies. Defendant's certified records were significant with numerous prior convictions, including convictions like the instant offense. The certified records amply supported the court's findings that his convictions were numerous. (*People v. Searle* (1989) 213 Cal.App.3d 1091, 1098 [three prior convictions are numerous].)

The record also supports the aggravating factor that the taking was of great monetary value. As we previously discussed, courts have held that a dollar amount of

---

[27] Defendant does not argue that his waiver was obtained invalidly.

[28] As set forth above in section IV., *ante*, there was no dual use of facts and the trial court properly found that the taking was of great monetary value.

$2,300 is sufficient to establish great monetary value. (See, e.g., *People v. Wright*, *supra*, 30 Cal.3d at pp. 708–709.)

Turning to defendant's violent conduct, the record shows that defendant used a firearm to rob a bank. He fled from law enforcement driving at a high rate of speed estimated to be over 130 miles per hour. In so doing, he created a dangerous environment. Defendant hit construction cones and scattered them in the street and in front of other cars. He was only apprehended because he lost control and his vehicle collided with a tree. As the trial court rightly noted, defendant poses "a significant risk to the safety of the community" by his conduct in this case. Sufficient evidence supports the court's conclusion that defendant's violent conduct indicates a serious danger to society. Defendant fails to persuade us that the aggravating factors were not proven in compliance with section 1170, subdivision (b).

## VI. Consecutive Sentences

In count 3, defendant was convicted of fleeing a police officer while driving recklessly (Veh. Code, § 2800.2). In count 4, defendant was convicted of felon in possession of a firearm (§ 29800, subd. (a)(1)). The jury found true that defendant personally used a firearm during the commission of count 1 (§§ 12022.5, subd. (a), 12022.53, subd. (b)) and count 2 (§ 12022.5, subd. (a)). In a bifurcated proceeding, in addition to finding eight prior serious felony convictions true under the Three Strikes law (§§ 667 subds. (e)–(j), 1170.12, subds. (a)–(e)), the trial court found true two prior serious felony convictions under section 667, subdivision (a).

In his opening brief, defendant asserts the trial court abused its discretion in running the sentence on count 4 consecutive to the sentence on count 3 because consecutive terms cannot be (1) based on factors not found true by a court or jury (2) based on aggravating factors "unsupported by the record," or (3) based on a dual use

of facts.[29]  He asserts that he was separately punished for having a prior felony conviction pursuant to section 667, subdivision (a) and for use of a firearm under section 12022.53, subdivision (b) and so cannot get a consecutive term on count 4.[30] Additionally, he asserts that the choice to run the term on count 4 consecutively to the term on count 3 cannot be based on the same aggravating factor used to impose the upper term on count 3.  Defendant does not develop his argument beyond listing these assertions.

In his reply brief, defendant asserts that "great monetary value" was "presumably used to impose consecutive terms" and prior convictions resulted in additional terms and "influenced the decision to impose consecutive terms."  These arguments are, again, not developed.

Arguments in appellate briefs must be supported by argument and, if possible, by citation of authority.  (Rule 8.204(a)(1)(B).)  It is not the appellate court's role to construct arguments that would undermine the judgment and defeat the presumption of correctness.  (See *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 565 [party improperly left the appellate court to decode what amounts to "little more than ' "a bare assertion that the judgment, or part of it, is erroneous" ' " and so its argument cannot prevail].)  We will not furnish argument or search the record to ascertain whether there is

---

[29] We did address and reject these assertions in another context, *ante*.

[30] We note that terms added pursuant to sections 667, subdivision (a) and 12022.53, subdivision (b) are not *separate punishments* under section 654.  Terms under section 667, subdivision (a), are enhancements based on defendant's status as a recidivist. (*People v. Cartwright*, *supra*, 39 Cal.App.4th at p. 1139; *People v. Price* (1992) 4 Cal.App.4th 1272, 1277.)  It is not improper to use the same prior conviction to double a base term and to impose a five-year enhancement.  (*People v. Murillo* (1995) 39 Cal.App.4th 1298, 1306–1307.)  Likewise, personal use of a firearm (§ 12022.53, subd. (b)) is an enhancement that the Legislature has determined warrants additional punishment.  (*People v. Ahmed* (2011) 53 Cal.4th 156, 163–164.)

support for defendant's contentions. (See *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546.)

We therefore reject defendant's assertion the trial court erred in imposing consecutive sentences.

## VII. No Abuse of Discretion in Refusing To Dismiss the Firearm Enhancement and the Two Prior Serious Felony Enhancements

Defendant argues the trial court abused its discretion when it failed to strike the 10-year firearm enhancement and two prior serious felony enhancements. He argues the court abused its discretion because of improper aggravating factors. He also argues the Legislature's enactment of Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill No. 81), effective January 1, 2022, significantly amended section 1385 and gave new dimension to how trial courts should evaluate various factors in dismissing enhancements, and the court did not understand its discretion with respect to this law.

The People respond that defendant forfeited his argument for failing to request dismissal of the firearm enhancement and the two prior serious felony enhancements under section 1385, subdivision (c). Reaching the merits, the People maintain that defendant's disagreement with how the trial court weighed the relevant factors does not establish an abuse of discretion.

We find defendant forfeited his claim, and, reaching the merits, conclude the trial court did not abuse its discretion when it declined to dismiss the enhancements.

### A. Additional Background

Defense counsel filed a sentencing memorandum requesting the trial court strike the section 12022.53, subdivision (b) firearm enhancement pursuant to Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill No. 620) and section 1385 in the " 'interest[s] of justice.' " He also requested that the court dismiss the two five-year serious felony enhancements due to the age of the convictions and the fact that defendant would already serve a life sentence without imposition of the serious felony priors.

56.

At the sentencing hearing, defense counsel argued that the trial court should dismiss the two section 667, subdivision (a) enhancements due to the age of the convictions, the positive letters that were received from defendant's family, the circumstances of the offense, and the fact that defendant was still receiving a "significant sentence" without application of the enhancements. Defense counsel also requested that the trial court strike the section 12022.53 enhancement because defendant was already convicted of felon in possession of a firearm. The prosecutor opposed these requests.

After considering the probation report, the parties' arguments, and the factors in aggravation and mitigation, and after acknowledging it had the discretion "to either strike them or to choose the term to be imposed," the trial court denied defense counsel's request to dismiss the firearm enhancement (§ 12022.53, subd. (b)) and the two serious prior felony enhancements (§ 667, subd. (a)) stating it was exercising its discretion "[i]n the furtherance of justice."

## B. Analysis

### 1. Standard of Review

A trial court's refusal to dismiss an enhancement under section 1385 is reviewed for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374–375 (*Carmony*).) The burden is on the party attacking the sentence to clearly show the sentencing decision was irrational or arbitrary. (*Id.* at p. 376.) To meet that burden, there must be a showing that the court was unaware of the scope of its discretionary powers, or its exercise of discretion was irrational or arbitrary. (*Ibid.*; see *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; *People v. Gaines* (2023) 93 Cal.App.5th 91, 142.) In the absence of such a showing, the court is " ' "presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Carmony*, at pp. 376–377.) Remand is not required unless the party challenging the sentence can prove that the court's decision was so irrational or arbitrary that no reasonable person could agree with it. (*Id.* at p. 377.)

### 2. Senate Bill No. 620

Section 12022.53 provides a 10-year sentence enhancement for the personal use of a firearm during the commission of certain offenses. (§ 12022.53, subd. (b).) Section 12022.53 enhancements were previously mandatory, however, on January 1, 2018, Senate Bill No. 620 added section 12022.53, subdivision (h), which gave the trial court discretion "in the interest of justice pursuant to Section 1385 and at the time of sentencing, [to] strike or dismiss an enhancement otherwise required to be imposed by this section." (§ 12022.53, subd. (h); see *People v. Pearson* (2019) 38 Cal.App.5th 112, 116.)

### 3. Senate Bill No. 81

Effective January 1, 2022, Senate Bill No. 81 amended section 1385 to specify factors the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice. (§ 1385, subd. (c); *People v. Sek* (2022) 74 Cal.App.5th 657, 674.) Section 1385, subdivision (c) now provides:

> "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances . . . are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(1)–(2).)

As applicable to defendant, multiple enhancements were alleged in a single case (§ 1385, subd. (c)(2)(B)). Moreover, the enhancements were imposed for prior convictions which were more than five years old (§ 1385, subd. (c)(2)(H)). Defendant also argues that section 1385, subdivision (c)(2)(C) applies because the application of the

enhancement under section 12022.53, subdivision (b) could result in a sentence of over 20 years.[31]

Section 1385, subdivision (c) requires the trial court to consider the interests of justice by assigning significant value to the enumerated mitigating circumstances when they are present, unless the court finds substantial, credible evidence of countervailing factors that " 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1036.)

## C. Defendant's Claims Are Forfeited

Generally, "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott*, *supra*, 9 Cal.4th at p. 356.) We emphasize the "[s]trong policy reasons" that support this rule: " 'It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)

The trial court did not specifically state it gave "great weight" to any mitigating circumstance under section 1385, subdivision (c) or make a finding on the record that dismissal of one or both enhancements would endanger public safety.[32] However, the court was not asked to make such a finding at the sentencing hearing. "[A] party cannot argue on appeal that the trial court erred in failing to conduct an analysis it was not asked to conduct." (*People v. Fruits* (2016) 247 Cal.App.4th 188, 208.) After the court stated

---

[31] Defendant argues that section 1385, subdivision (c)(2)(C) applies. We disagree. As set forth more fully below, defendant's sentence without the enhancements was over 20 years, thus, the application of the enhancements did not *cause* the sentence to exceed 20 years. (§ 1385, subd. (c)(2)(C).)

[32] We point out that the trial court made a finding that defendant posed a significant safety risk to the community.

its reasons for imposing defendant's sentence, there was no objection. Defendant's claims are forfeited.

### D. No Abuse of Discretion

#### 1. The Firearm Enhancement

The factors a trial court must consider when determining whether to strike a firearm enhancement "are the same . . . the trial court must consider when handing down a sentence in the first instance." (*People v. Pearson*, *supra*, 38 Cal.App.5th at p. 117; see rule 4.428(b).) The court should also consider those factors listed in rule 4.410, general objectives in sentencing, as well as circumstances in aggravation and mitigation.[33] (Rules 4.421, 4.423.) "[U]nless the record affirmatively reflects otherwise," the trial court is deemed to have considered factors enumerated in the California Rules of Court. (Rule 4.409; see Evid. Code, § 664 [presumption that official duty has been regularly performed].)

Here, the trial court found six factors in aggravation true. The court expressly noted that defendant poses a "significant risk to the safety of the community" based on his criminal history and the circumstances of the current offense. The court also considered the mitigating factors and found that the circumstances in aggravation preponderate and have a much greater weight. The court's reasoning was sound. (See *People v. Lamb* (1988) 206 Cal.App.3d 397, 401 [court has wide discretion in weighing aggravating and mitigating factors, and the court need not state reasons for minimizing or disregarding circumstances in mitigation].)

---

[33] Rule 4.428(b) provides that, "[i]n determining whether to strike . . . punishment for the enhancement, the court may consider the effect that striking the enhancement would have on the status of the crime as a strike, the accurate reflection of the defendant's criminal conduct on his or her record, the effect it may have on the award of custody credits, and any other relevant consideration."

Defendant argues remand is necessary because the trial court did not state that it would not have reduced the term for the firearm enhancement, if authorized to do so. However, there is no evidence the court refused or failed to consider the relevant factors or misunderstood the scope of its discretion under Senate Bill No. 620.  (See rule 4.409.) The court recognized its discretion as to the enhancements, to either strike them or impose the term, and imposed the term in "furtherance of justice."  (See, e.g., *People v. Pearson*, *supra*, 38 Cal.App.5th at p. 116.)

Defendant also argues the trial court should have recognized an additional mitigating circumstance that the application of the enhancement could result in a sentence over 20 years.  (§ 1385, subd. (c)(2)(C).)  Section 1385, subdivision (c)(2)(C) does not apply.  Defendant's sentence exceeded 20 years without application of the enhancement by virtue of the term imposed of 25 years to life for defendant's second degree robbery conviction (§ 212.5, subd. (c); count 1).  Thus, the application of the enhancement did not *cause* the sentence to exceed 20 years.  (§ 1385, subd. (c)(2)(C).)

Nonetheless, even assuming section 1385, subdivision (c)(2)(C) applied, there is nothing in the record which shows the trial court abused its discretion by failing to dismiss the firearm enhancement.  (See, e.g., *People v. Ponder* (2023) 96 Cal.App.5th 1042, 1052 [even assuming the mitigating circumstance under § 1385, subd. (c)(2)(C) applied, the defendant failed to show the trial court's failure to consider the application of that mitigating factor prejudiced him].)  The court assessed the nature and circumstances of the current offense, the aggravating and mitigating factors, and stated it understood its discretion.

Even if another court might have concluded differently, the trial court's refusal to strike the firearm enhancement was within the bounds of reason and does not reflect any abuse of discretion.  (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

61.

## 2. The Two Prior Serious Felony Enhancements

Turning to the trial court's failure to dismiss the two prior serious felony enhancements under section 667, subdivision (a), defendant first argues his sentence is excessive because he is serving *both* a Three Strikes life term and two five-year enhancement terms based on the same conduct. The Three Strikes law is an alternative sentencing scheme for the current offense rather than an enhancement. (*People v. Olay* (2023) 98 Cal.App.5th 60, 66.) The trial court exercised its discretion and declined to dismiss the enhancements in furtherance of justice given the evidence of other countervailing factors. (See *Walker*, *supra*, 16 Cal.5th at p. 1036.) This was proper.

Defendant also argues that the trial court abused its discretion because it did not explicitly recognize its authority to dismiss under section 1385, subdivision (c) or give great weight to mitigating factors. We will not presume that the trial court was unaware of the requirements of section 1385, subdivision (c) because the court did not specifically state it gave great weight to mitigating circumstances. (*People v. Myers* (1999) 69 Cal.App.4th 305, 309–310.) The court stated that it was aware of its discretion when it declined to dismiss the enhancements. The record also shows the court balanced several factors and did not impose defendant's sentence without the exercise of discretion. The court stated that it considered the age of the prior convictions, but imposition of the enhancements was proper because there was no significant period where defendant remained crime free. The court considered the factors in aggravation and mitigation. It indicated consecutive sentences were warranted in this case, and that defendant poses a significant risk to the safety of the community.

The record shows the court knew the relevant law and applied it correctly. Moreover, the court's ultimate conclusion that dismissal of the enhancements was not in the furtherance of justice was reasonable in light of defendant's current crimes, the facts of the case, and aggravating factors. Even if defendant did not forfeit his claims of error, they fail on the merits.

## VIII. Motion To Strike Prior Strike Convictions

Defendant argues the trial court abused its discretion when it failed to strike his prior strike convictions under the circumstances of this case, which he argues placed him "outside the spirit" of the Three Strikes law. He also argues that subdivision (c) of section 1385 requires the trial court to dismiss an enhancement if it is in the furtherance of justice to do so. He acknowledges that Courts of Appeal have concluded that section 1385, subdivision (c) does not apply to the decision of whether to dismiss a prior strike conviction because the Three Strikes law is an alternative sentencing scheme not an enhancement but, nevertheless, asserts the trial court erred in failing to apply that subdivision.

The People assert that defendant did not ask the trial court to dismiss the prior serious felony conviction enhancements under section 1385, subdivision (c) and so that argument is forfeited. Additionally, they argue the trial court's reasoning was neither irrational nor arbitrary. We agree with the People.

### A. Additional Background

Defense counsel brought a motion under *Romero* and Senate Bill No. 1393 (2017–2018 Reg. Sess.) to strike defendant's prior strike convictions. The prosecutor opposed the request, arguing defendant was not outside the spirit of the Three Strikes law.

The trial court's reasoning for declining to strike defendant's prior strike convictions was as follows:

> "[W]ith regard to the Court's discretion, I'm guided . . . by a lot of the case law that addresses this . . . [a]nd the Court has to decide if, in furtherance of justice, that strike priors should be stricken. The Court has to consider both the Constitutional rights of the defendant as well as the interests of society, represented by the People, in determining whether there should be a dismissal. And the Courts have recognized that society represented by the People has a legitimate interest in the fair prosecution of crimes properly alleged. A dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion.

63.

"The Court must consider the defendant's background, including the nature of his present offenses and other individualized considerations. The Court has to balance the interest in dismissing the strike priors against the harm to the public. The Court considers all the circumstances relating to the defendant, including his age, his education, his criminal record, [and] his experience. Those are all the individualized considerations which we must consider in deciding whether relief under [section] 1385 would be in the furtherance of justice.

"As [*People v. Williams*, *supra*, 17 Cal.4th at page 161] discusses, which followed *Romero*, that a sentencing Court's exercise of discretion to dismiss a prior strike has to be guided by the following standard. May the defendant in light his current crime and his criminal history, background, character and prospects be deemed outside the spirit of the Three Strikes Law in whole or in part, and therefore be treated, as though he had not suffered the prior strike conviction. When the factors manifestly support the striking of a prior conviction and no reasonable minds can differ, the failure to strike would constitute [an] abuse of discretion.

"I'm also aware of . . . Rule 4.428, which . . . discusses striking enhancements under Section 1385. I'm considering that as well.

"As I consider all these circumstances . . . looking at the defendant's criminal history, and it's a significant criminal history going back to 1992. It became very serious in 1993 when he was convicted of . . . seven different counts of bank robbery under [section] 212.5[, subdivision ](b). He was in custody and finally paroled in 1998, discharged from parole in 2001 . . . not long after that, another conviction in 2003. Again, another bank robbery, [section] 212.5[, subdivision ](c). Now he's back in custody. [He d]idn't get released from custody or paroled until 2011. Discharged from parole in 2014. Not long after that, 2018, here's convictions under . . . [s]ection 30305 and some Vehicle Code violations. Once again, back to prison in 2018, and then released in 2020. Another less significant conviction in 2023 for [section] 148[, subdivision ](a)(1).

"There's . . . a continuous pattern of criminal behavior with no significant period of time where the defendant was out of custody, not on probation or parole and showing us that he could live a law-abiding life and conform to the norms of society . . . I am considering all the different circumstances relating to the defendant, as I've stated. And considering everything, I do not find it would be in the interest of justice . . . to strike the strike priors. The *Romero* motion is denied." (Italics added.)

## B. Defendant Forfeited His Section 1385, Subdivision (c) Claim

Defendant did not raise his section 1385, subdivision (c) argument in the trial court. He has, therefore, forfeited that argument. (See *Carmony*, *supra*, 33 Cal.4th at pp. 375–376 ["any failure on the part of a defendant to invite the court to dismiss under section 1385 . . . forfeits his or her right to raise the issue on appeal"]; *People v. Scott*, *supra*, 9 Cal.4th at p. 353 ["the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"]; *People v. Coleman* (2024) 98 Cal.App.5th 709, 724 [the defendant's argument the trial court should have dismissed enhancements under § 1385, subd. (c)(2)(B), (c)(2)(C), was "forfeited for failure to request that the trial court strike the enhancements. . . ."].)

However, we exercise our discretion to reach the merits of his contentions to forestall the claim of ineffective assistance of counsel. (See *People v. Williams*, *supra*, 17 Cal.4th at pp. 161–162, fn. 6.)

## C. The Trial Court Did Not Abuse Its Discretion

We review the trial court's denial of defendant's motion to strike his prior felony convictions for an abuse of discretion. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637.) For example, an abuse of discretion occurs where the trial court was not " ' "aware of its discretion" to dismiss . . . or where the court considered impermissible factors in declining to dismiss.' " " ' "[I]t is not enough to show that reasonable people might disagree about whether to strike one or more" prior conviction allegations.' " (*Ibid*.; see *Carmony*, *supra*, 33 Cal.4th at pp. 377–378.)

In *Romero*, our Supreme Court concluded that "section 1385[, subdivision ](a) . . . permit[s] a court acting on its own motion to strike prior felony conviction allegations in cases brought under the Three Strikes law." (*Romero*, *supra*, 13 Cal.4th at pp. 529–530; see *People v. Strong* (2001) 87 Cal.App.4th 328, 335.) The state high court emphasized, however, that "[a] court's discretion to strike prior felony conviction allegations in furtherance of justice is limited. Its exercise must proceed in strict compliance with

section 1385[, subdivision ](a), and is subject to review for abuse." (*Romero*, at p. 530.) " ' "[T]he language of [section 1385], 'in furtherance of justice,' requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal." ' " (*Ibid*.) " ' " '[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion.' " ' " (*Id*. at p. 531.)

In *Williams*, our Supreme Court gave further definition to the standard for dismissing a strike—"in furtherance of justice"—by requiring that the defendant be deemed "outside the spirit" of the Three Strikes law before a strike was dismissed: "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

Following *Williams*, the overwhelming majority of California appellate courts have reversed the dismissal of, or affirmed the refusal to dismiss, a strike for defendants with a long and continuous criminal career. (E.g., *People v. Stone* (1999) 75 Cal.App.4th 707, 717 [no abuse of discretion in refusing to vacate one of the defendant's strikes because the defendant "is an exemplar of the 'revolving door' career criminal to whom the Three Strikes law is addressed"]; *People v. Thornton* (1999) 73 Cal.App.4th 42, 49 [reversing order dismissing two of three strikes, where the defendant had a long history of felonies, misdemeanors, drug use, and parole violations, which showed that his background, character, and prospects were "dismal, and cannot be said to be outside the spirit of the [T]hree [S]trikes law"]; see *People v. McGlothin* (1998) 67 Cal.App.4th 468, 475 [reversing dismissal of strike where the defendant's criminal history extended back to when he was 15 years of age, including previous felonies, various misdemeanors, and parole and probation violations].)

The trial court addressed defendant's *Romero* motion and made the requisite findings necessary when it declined to strike his prior strikes. The court discussed defendant's lengthy criminal record, which included multiple convictions since 1992 showing a continuous pattern of criminal behavior. Considering this factor alone, the trial court was within its discretion not to strike defendant's prior strike convictions. (*People v. Stone*, *supra*, 75 Cal.App.4th at p. 717.)

The trial court considered the nature and circumstances of defendant's present offense. The court also considered defendant's background and other individualized characteristics, including his age, education, criminal record, and experience. After weighing those considerations, along with defendant's lengthy criminal record, the court rightly found dismissal of the prior strikes was not in the interests of justice.

Moreover, there was no significant period of time where defendant was out of custody since 1993. "In determining whether a prior conviction is remote, the trial court should not simply consult the Gregorian calendar with blinders on." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813; see *People v. Solis* (2015) 232 Cal.App.4th 1108, 1124 [a prior strike conviction is not properly stricken merely because it is 30 years old].) "To be sure, a prior conviction may be stricken if it is remote in time. In criminal law parlance, this is sometimes referred to as 'washing out.' [Citations.] The phrase is apt because it carries the connotation of a crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways." (*Humphrey*, at p. 813.)

Here, the trial court examined defendant's conduct after the prior strike occurred. The court noted that defendant continuously suffered multiple serious felonies within a few years after being released from prison. The court reasoned that defendant has not shown that he can live a legally blameless life or "conform to the norms of society." The court's reasoning was sound. (Cf. *People v. Garcia* (1999) 20 Cal.4th 490, 503 [the

defendant's prior offenses were committed during a "single period of aberrant behavior" and did not involve violence].)

Defendant argues the trial court abused its discretion by considering inadmissible aggravating factors and failed to recognize circumstances in mitigation. However, the court showed it relied on defendant's nature, character, and prospects, including individualized considerations. Moreover, defendant's argument that additional factors in mitigation should have been considered lacks merit. As defendant acknowledged in his opening brief, Courts of Appeal have determined that section 1385, subdivision (c)(2) does not apply to the Three Strikes law.[34] (See *People v. Burke* (2023) 89 Cal.App.5th 237, 244 ["The plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement."].)

Defendant also argues the use of multiple prior convictions arising from a single act against a single victim may not constitute different strikes under the Three Strikes law. (See *People v. Vargas* (2014) 59 Cal.4th 635, 645–646 [two prior convictions arising out of a single act against a single victim may not be treated as two strikes for purposes of Three Strikes sentencing]; see also *People v. Shaw* (2025) 18 Cal.5th 1089, 1093 [a single act that harms two victims may not be treated as two strikes for purpose of Three Strikes sentencing].) He contends that several of his strikes should be erased from the court's consideration. Defendant however does not dispute that he suffered two prior strikes from different acts in 1993 and 2003. Thus, he still falls into the gambit of a Three Strikes offender. (*People v. Henderson* (2022) 14 Cal.5th 34, 44 [the Three Strikes

---

[34] Defendant relies on section 1385, subdivision (c)(2)(C), (H)—which triggers a presumption in favor of dismissal of *enhancements*—for the proposition that his prior strike conviction should have been stricken because it results in a sentence more than 20 years old and the strike is more than five years old. Section 1385, subdivision (c)(2) does not apply to the Three Strikes alternative sentencing scheme. (See *People v. McDowell* (2024) 99 Cal.App.5th 1147, 1154; *People v. Burke, supra*, 89 Cal.App.5th at p. 244.)

law may apply to a defendant with two prior serious or violent felonies and when the new conviction is also a serious or violent felony].)

In sum, there is nothing to suggest that even if some of defendant's convictions from a single case were not considered, the trial court would have imposed a more favorable sentence, in light of the seriousness of the current crime and the extent of his criminal history, which the trial court rightfully relied upon when it made its ruling. We find no abuse of discretion.

## IX.    Correction of the Clerk's Minutes

The parties agree, as do we, that the clerk's minute order incorrectly reflects the trial court's oral pronouncement as to count 1. Defendant's sentence on count 1 was not doubled pursuant to the Three Strikes law as the minute order reflects. The trial court imposed an indeterminate term of 25 years to life on count 1. The clerk's minute order incorrectly states that defendant's sentence as to count 1 was also "doubled pursuant to . . . section 667[, subdivision ](e)." (Capitalization omitted.)

The minute order shall be corrected to reflect the oral pronouncement of judgment and the language referring to defendant's sentence being doubled under the Three Strikes law shall be deleted. We direct the trial court to correct that mistake. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [an appellate court may correct clerical errors appearing in abstracts of judgment either on its own motion or upon application of the parties].)

## X.    Correction to Abstract of Judgment

The abstract of judgment contains clerical errors regarding defendant's sentence that should be corrected. Where there is a discrepancy between the oral pronouncement of judgment and the abstract of judgment, the oral pronouncement controls. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)

The abstract of judgment does not contain the sentence imposed on count 6. We direct the trial court to amend the determinate abstract of judgment to reflect defendant's sentence on count 6, to be served concurrently to count 4.

The abstract of judgment erroneously states that defendant has no reportable firearms. However, the trial court noted defendant had reportable firearms and ordered the firearms relinquished or handled consistent with the law.

## DISPOSITION

The judgment is affirmed. The trial court is directed to issue an amended minute order and abstract of judgment that correctly reflect the oral pronouncement of judgment.

DETJEN, Acting P. J.

WE CONCUR:

FRANSON, J.

PEÑA, J.